FRITZ JEAN vs. DIRECTOR OF THE DIVISION OF EMPLOYMENT
SECURITY & another.[1]

Suffolk.  November 10, 1983. — February 15, 1984.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, & O'CONNOR, JJ.

*Employment Security,* Misconduct by employee, Findings by board of
   review, Eligibility for benefits.

Where a review examiner of the Division of Employment Security found
   that an applicant for unemployment benefits had engaged in deliber-
   ate misconduct by disobeying explicit instructions for the operation of
   a machine, but made no findings as to the employee's state of mind to
   support a conclusion that the employee had acted in wilful disregard
   of his employer's interest, this court ordered that the case be remanded
   to the division for further proceedings.  [208-210]

CIVIL ACTION commenced in the Boston Municipal Court
Department on October 12, 1982.

The case was heard by *Donovan, J.*

*Aaron Krakow (Mark Mitshkun* with him) for the em-
ployee.

*Michael S. Bearse,* for Ruland Manufacturing Co., Inc.,
submitted a brief.

HENNESSEY, C.J.   After being discharged from his job as a
"chucking machine" operator at Ruland Manufacturing
Co., Inc. (Ruland), on July 2, 1982, Fritz Jean applied for
unemployment compensation benefits pursuant to G. L.
c. 151A.   His claim was allowed and Ruland filed a timely
appeal.   A hearing was held on August 11, 1982, by a
review examiner of the Division of Employment Security
(division).   The review examiner made findings and relying
on G. L. c. 151A, § 25 (*e*) (2),[2] reversed the allowance of

_____

[1] Ruland Manufacturing Co., Inc.

[2] General Laws c. 151A, § 25 (*e*) (2), as appearing in St. 1975, c. 684,
§ 78, provides as follows: "No waiting period shall be allowed and no

benefits. The division's board of review (board) denied Jean's application for further review, making the review examiner's decision the final decision of the board. G. L. c. 151A, § 41 (c). The decision was affirmed by a judge of the Boston Municipal Court. It was reported here under G. L. c. 151A, § 42. We remand the case for further proceedings consistent with this opinion.

We summarize the review examiner's findings of fact.[3] Jean was employed by Ruland as a chucking machine operator from August 12, 1981, to July 2, 1982. Ruland alleges that during that period Jean was counseled several times on the use of the chucking machine he operated. According to Ruland, Jean was unreceptive to such direction or to corrective criticism. As a result, Ruland claims, Jean was reprimanded on several occasions for failure to follow instructions and improper operation of the chucking machine. In late June, 1982, Jean's assigned machine had a break down which was attributable to negligence on the claimant's part in not checking chuck pressure. Ruland had the machine repaired. After the repairs were completed, Jean was specifically instructed to go through a series of six operations of the chucking machine. He was directed to do these operations manually to assure that the machine was in proper working condition and would not malfunction again. Jean, however, performed only three of the operations manually. The other three were done under power. He then reported that the machine had been checked through the six operations and was in proper working order. Nevertheless, the machine malfunctioned within thirty

---

benefits shall be paid to an individual under this chapter . . . (e) For the period of unemployment next ensuing and until the individual has had at least four weeks of work and in each of said weeks has earned an amount equivalent to or in excess of his weekly benefit amount after he has left his work . . . (2) by discharge shown to the satisfaction of the director to be attributable solely to deliberate misconduct in wilful disregard of the employing unit's interest . . . ."

[3] The board adopted the findings of the review examiner, and we therefore treat them as the findings of the board.

minutes into its production operation. This second malfunction caused Ruland considerable labor and lost production cost. Upon being confronted by his supervisor, Jean admitted to having not followed instructions. He declared, however, that he was not responsible as another employee was operating the machine when it malfunctioned.

The board found as follows: "It is found from conflicting testimony that the claimant was discharged when after reprimand he again failed to follow instructions resulting in a machine breakdown with costly repairs and lost production. Such discharge is attributable solely to deliberate misconduct in wilful disregard of employing unit interests within the meaning of Section 25 (e) (2) of the Mass. Employment Security Law and it is so found."

Jean challenges the board's findings on two grounds. First, he claims the board's decision was unsupported by substantial evidence. Second, he argues that the board's decision was improper because the board failed to make subsidiary findings on the employee's state of mind. We do not address Jean's first claim as we agree that the board acted improperly in rendering its decision under G. L. c. 151A, § 25 (e) (2), without making subsidiary findings of fact regarding Jean's state of mind. See *Reavey* v. *Director of the Div. of Employment Sec.*, 377 Mass. 913, 914 (1979).

In examining whether the Legislature intended to preclude a discharged employee from the benefits of G. L. c. 151A by the application of § 25 (e) (2), *Garfield* v. *Director of the Div. of Employment Sec.*, 377 Mass. 94, 95-96 (1979), we must examine whether a claimant "has brought about his own unemployment through intentional disregard of standards of behavior which his employer has a right to expect." *Id.* at 97. This examination is in two parts. Both "deliberate misconduct" and "wilful disregard" of an employer's interest by the claimant are required to deny benefits under § 25 (e) (2). *Torres* v. *Director of the Div. of Employment Sec.*, 387 Mass. 776, 778-779 (1982). *Goodridge* v. *Director of the Div. of Employment Sec.*, 375 Mass. 434, 436 (1978). Findings as to both of these issues under § 25 (e)

(2) must be made to warrant disapproval of benefits. "An administrative agency must make findings on each factual issue essential to its decision." *Manias* v. *Director of the Div. of Employment Sec.*, 388 Mass. 201, 205 (1983), quoting *Reavey* v. *Director of the Div. of Employment Sec.*, *supra*. We have stated specifically that the "critical factual issue" in considering whether an employee's alleged misconduct is in wilful disregard of his employer's interest is the employee's state of mind at the time of the misconduct. *Torres, supra* at 779.

Here, the board made subsidiary findings that Jean engaged in deliberate misconduct by disobeying explicit instructions to run the machine manually through six operations. The board did not, however, make subsidiary findings regarding Jean's wilful disregard of his employer's interest. It made no reference to his state of mind other than that he admitted that he performed only three of the six operations by hand. We repeatedly have stated that a finding of deliberate misconduct alone will not warrant a denial of benefits under § 25 (*e*) (2). *Torres, supra*. "In the absence of any finding on the basic factual issue of the employee's state of mind, the agency decision cannot stand." *Reavey, supra*. While the board found that Jean failed to follow explicit instructions, what this fact implies regarding Jean's state of mind is far from clear. The board did not "take into account the worker's knowledge of the employer's expectation, the reasonableness of that expectation and the presence of any mitigating factors," *Garfield, supra* at 97, as we have instructed. The record of the hearing suggests that Jean's lack of proficiency in speaking English may have presented a communication problem causing Jean, in good faith, to misunderstand the instructions given to him. Similarly, he may not have understood the consequences of his actions as explained to him. Findings on such factual questions will clarify Jean's state of mind at the time of the misconduct. The board must make specific findings regarding Jean's state of mind in not following directions before concluding that the deliberate misconduct in question was in wilful disregard of Ruland's interest under § 25 (*e*) (2).

The decision of the Municipal Court judge is reversed. Judgment is to be entered remanding the case to the Division of Employment Security for further proceedings consistent with this opinion.

*So ordered.*