DIRECTOR OF THE DIVISION OF EMPLOYMENT SECURITY
*vs.* TOWN OF MATTAPOISETT.

Plymouth. February 8, 1984. — August 23, 1984.

Present: WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Res Judicata. Administrative Law,* Preclusive effect of decision. *School and School Committee,* Dismissal of tenured personnel. *Employment Security,* Eligibility for benefits, Misconduct by employee.

This court disapproved a town's litigating an action by the Director of the Division of Employment Security for reimbursement of a dismissed teacher's unemployment compensation benefits, at a time when the issue of the teacher's entitlement to benefits was still the subject of separate appeals by the town, which were then pending in a District Court. [860-861]

An adjudication that a tenured teacher's discharge for misconduct was proper under G. L. c. 71, § 42, had no bearing on the critical factual issue of her state of mind at the time of her misconduct and, therefore, did not preclude the Division of Employment Security from determining in accordance with G. L. c. 151A, § 25 (*e*) (2), that her state of mind was not such as to disqualify her from securing unemployment compensation benefits. [861-864]

CIVIL ACTION commenced in the Fourth Plymouth Division of the District Court Department on February 17, 1981.

The case was heard by *Anderson, J.*

*Donald J. Fleming* for the defendant.

*Francis X. Bellotti,* Attorney General, & *George J. Mahanna,* Assistant Attorney General, for the plaintiff, submitted a brief.

ABRAMS, J. This appeal challenges a determination of a District Court judge that the town of Mattapoisett (town) was required to reimburse the Division of Employment Security (DES) for unemployment benefits paid to a tenured teacher terminated under G. L. c. 71, § 42, for conduct unbecoming a teacher. In its answer, the town claimed that DES was obliged to give issue-preclusive effect to the discharge proceeding and

had to conclude that the teacher's discharge was "attributable solely to deliberate misconduct in wilful disregard of the employing unit's interest." G. L. c. 151A, § 25 (*e*) (2), as amended by St. 1982, c. 489, § 5. Thus, the town asserts that the teacher was disqualified from receiving benefits, and that DES is not entitled to any reimbursement under G. L. c. 151A, § 15, for benefits paid to the teacher.[1] The instant appeal puts the cart before the horse because on this record it appears that issues relating to the teacher's entitlement to benefits are currently the subject of appeals pending in a District Court.

We summarize the somewhat tortuous procedural background of this case. The teacher, Marjorie Springgate, was discharged on June 21, 1978, following an evidentiary hearing which, the school committee found, substantiated charges that on various occasions from May 15, 1977, through March 24, 1978, she disrupted classes of other teachers, pushed a student, made false statements to administrative officials, behaved in an argumentative and overbearing manner, and, after being warned that further unprofessional conduct would be grounds for termination, made additional false statements and pushed another teacher. The teacher appealed the school committee's decision to the Superior Court. G. L. c. 71, § 43A. During the pendency of that appeal, the teacher applied for and received unemployment benefits from DES in a decision which the town has appealed and which, the town advises us, is currently pending in a District Court awaiting resolution of the instant case.

After a trial de novo, a Superior Court judge found that none of the charges against the teacher was substantiated by credible evidence, and that the school committee had failed to establish the teacher's dismissal for "inefficiency, incapacity, conduct unbecoming a teacher . . . insubordination or other good cause." G. L. c. 71, § 42, as amended through St. 1972,

---

[1] Pursuant to G. L. c. 151A, § 14A, the town has elected to pay into the unemployment compensation fund amounts equal to benefits paid by DES under G. L. c. 151A to employees discharged by the town. Such amounts are paid as an alternative to annual contributions to a general unemployment benefits fund at a rate established by G. L. c. 151A, § 14.

c. 464, § 2. The Superior Court judge entered judgment reinstating the teacher. The school committee appealed to the Appeals Court, which, concluding that the Superior Court judge's findings were clearly erroneous, reversed and remanded for the entry of judgment upholding the discharge. *Springgate* v. *School Comm. of Mattapoisett,* 11 Mass. App. Ct. 304 (1981). Following the Appeals Court's decision, the teacher again applied for, and again obtained, unemployment benefits from DES; the town's appeal from that decision, according to the town, is currently pending in the District Court along with the appeal of the earlier decision awarding benefits.

One week after the Appeals Court upheld the discharge, DES filed a complaint under G. L. c. 151A, § 15, in a District Court to recover from the town amounts paid to the teacher during the period from her discharge until February, 1979, which appears to be the month in which she was reinstated by the Superior Court.[2] On February 2, 1982, a District Court judge entered judgment, along with findings and rulings, in favor of DES. The town appealed to the Appellate Division of the District Courts. On April 19, 1983, the Appellate Division, finding no error, affirmed. The town filed a timely appeal to this court.

We note our disapproval of the sequence in which these intertwined cases are being litigated. The general rule is that a judgment may be collaterally attacked only "if other means of obtaining relief from the judgment are unavailable to the applicant or the convenient administration of justice would be served by determining the question of relief in the course of the subsequent action." Restatement (Second) of Judgments § 80 (1982). See *Vose* v. *Morton,* 4 Cush. 27, 31 (1849). Issues pertaining to the validity of DES decisions awarding benefits to the teacher are appropriately resolved on the pending direct appeals from those decisions, not by means of collateral attack in the instant litigation. General Laws c. 151A, § 15 (*b*),

---

[2] The complaint originally sought recovery of $4,805.13 but was subsequently amended to reduce DES's request for relief to the amount of $2,586.11, a sum including accrued interest. No reimbursement is sought in this G. L. c. 151A, § 15, action for payments to the teacher by DES in the period following the Appeals Court's decision upholding the discharge.

as amended through St. 1948, c. 603, § 6, provides that "[a]ctions brought under this subsection shall be given precedence over other civil cases *except petitions for review arising under [G. L. c. 151A, § 42]*" (emphasis added). The town was therefore remiss in litigating the current action prior to the appeal from the DES decision awarding the benefits in question. See note 2, *supra*. Absent special circumstances, determination of a cause of action entirely contingent on the validity of an appealed judgment in a separate proceeding should be stayed pending resolution of the appellate process unless the detriment to the litigants of delay outweighs the benefits of judicial economy and orderly adjudication. In light of the town's right to have the § 42 petition for review adjudicated before an adjudication of the § 15 action, as well as its alternative right to be credited or reimbursed, after payment, for any amounts determined to have been paid erroneously, see G. L. c. 151A, § 18, as appearing in St. 1982, c. 489, § 4, we perceive no such detriment in this case.

The record before us is completely bereft of information regarding the substance of the DES decisions. Given this deficiency and the procedural posture of the cases, we think the issue is not properly before us. Nonetheless, to resolve any existing uncertainty, we shall consider whether the adjudication that the teacher's discharge was authorized under G. L. c. 71, § 42, precluded DES from determining that the teacher's discharge is not "attributable solely to deliberate misconduct in wilful disregard of the [town's] interest." See *Wellesley College v. Attorney Gen.,* 313 Mass. 722, 731 (1943). We answer that question in the negative. We leave open questions concerning the extent, if any, to which specific factual findings in a G. L. c. 71, § 42, adjudication are entitled to preclusive effect in any subsequent G. L. c. 151A proceeding.

Issue preclusion operates to prevent a party from relitigating an adjudicated issue essential to a valid and final prior judgment binding on that party.[3] *Almeida* v. *Travelers Ins. Co.,* 383

---

[3] Although DES is technically, at least on appeal, considered a party to the benefits proceedings, see G. L. c. 151A, § 42, the town, correctly, does not seek to invoke issue preclusion against DES (which was not a party

Mass. 226, 229-230 (1981). Restatement (Second) of Judgments § 27 (1982). The findings of the school committee were not, however, entitled to preclusive effect because they were divested of the requisite finality upon the filing of an appeal entitling the teacher to a de novo review in the Superior Court.[4] See 1B Moore's Federal Practice par. 0.416[3], at 523 (1983). Compare *Almeida* v. *Travelers Ins. Co., supra* at 230-231 (findings of administrative tribunal given preclusive effect where court limited to substantial evidence review). The town's argument that the determination of the Appeals Court[5] should have been given preclusive effect is unavailing because the Appeals Court had not yet decided the appeal at the time DES adjudicated the teacher's eligibility for the benefits at issue in this G. L. c. 151A, § 15, action.[6]

In addition, the town's allegation of error founders on the basic requirement for issue preclusion: commonness of issues.

---

to the discharge proceeding), but argues instead that DES, in its role as adjudicator of the benefits proceedings, erred in not giving the discharge proceeding issue preclusive effect against the teacher.

[4] In addition, because the school committee is a party with an interest adverse to the teacher's in the DES benefits proceedings, see G. L. c. 151A, § 39, its findings in the discharge proceeding should not have preclusive effect against the teacher before DES. See *Marion County School Bd.* v. *Clark,* 378 So. 2d 831 (Fla. Dist. Ct. App. 1979).

[5] To the extent the town relies on "findings" by the Appeals Court, such reliance is misplaced. Appellate courts are not fact finders. "The duty of weighing evidence and of finding facts . . . in an action at law is not an appropriate function of [an appellate] court . . . ." *Tardiff, petitioner,* 328 Mass. 265, 267 (1952), quoting *Atlantic Maritime Co.* v. *Gloucester,* 228 Mass. 519, 522 (1917). In a § 42 discharge proceeding appealed to the Superior Court, fact-finding is vested in the Superior Court. Compare benefits proceedings before DES, in which fact-finding is committed to the agency. *Manias* v. *Director of the Div. of Employment Sec.,* 388 Mass. 201, 205 (1983). On this appeal, we need not and do not involve ourselves as to what facts remain adjudicated after the Appeals Court's decision. That decision set aside the trial judge's findings and assessment of credibility as "plainly wrong." See *Springgate* v. *School Comm. of Mattapoisett,* 11 Mass. App. Ct. 304, 310 (1981).

[6] Because of the need for prompt adjudication of eligibility for unemployment benefits, only in exceptional cases would a judicial determination whether a teacher was appropriately discharged under G. L. c. 71, § 42, precede DES adjudication under G. L. c. 151A, § 24.

The standard of "inefficiency, incapacity, conduct unbecoming a teacher . . . insubordination or other good cause," on which discharges under G. L. c. 71, § 42, must be grounded is substantially less rigorous than the G. L. c. 151A, § 25 (*e*) (2), standard of "deliberate misconduct in wilful disregard of the employing unit's interest," pursuant to which a claimant may be disqualified from receiving unemployment benefits. Discharge proceedings focus on the needs of the school committee, and a discharge will be upheld upon "any ground which is not arbitrary, irrational, unreasonable, in bad faith, or irrelevant to the committee's task of running a sound school system." *Springgate* v. *School Comm. of Mattapoisett, supra* at 308, and cases cited. In marked contrast, "the critical issue in determining whether disqualification [for unemployment benefits] is warranted is the claimant's state of mind in performing the acts that cause [her] discharge." *Garfield* v. *Director of the Div. of Employment Sec.,* 377 Mass. 94, 97 (1979). Thus, there is no basis under G. L. c. 151A, § 25 (*e*) (2), for denying benefits to "a worker [who] is ill-equipped for [her] job or has a good faith lapse in judgment or attention," *Garfield* v. *Director of the Div. of Employment Sec., supra,* conduct which might well support a discharge under G. L. c. 71, § 42. We think it clear that the requisite element of identity of issues is lacking and that a determination that a tenured teacher was properly discharged does not preclude DES from finding that teacher eligible for benefits. Compare *Amador* v. *Unemployment Ins. Appeals Bd.,* 35 Cal. 3d 671 (1984). See *Ferris* v. *Hawkins,* 135 Ariz. 329 (Ct. App. 1983). But see *In re Claim of Ranni,* 58 N.Y.2d 715 (1982).

The Appeals Court's decision on which the town mistakenly relies illustrates the difference in the standards under the two statutes. The Appeals Court determined that "the evidence . . . substantiated a sufficient number of the series of relatively minor incidents to justify the school committee's determination of *incapacity or conduct unbecoming a teacher*" (emphasis supplied). *Springgate* v. *School Comm. of Mattapoisett, supra* at 316. The court characterized the teacher's behavior as an "*inability or unwillingness . . .* to eschew displays of rudeness

and tactlessness in front of students and to work in a cooperative and civil manner with her colleagues" (emphasis supplied). *Id*. The Appeals Court could not conduct an inquiry into whether the teacher's conduct was "deliberate," or whether it was in "wilful disregard" of the school committee's interests, and it made no such inquiry. "Findings [by the agency] as to both of these issues under § 25 (*e*) (2) must be made to warrant disapproval of benefits." *Jean* v. *Director of the Div. of Employment Sec.*, 391 Mass. 206, 208-209 (1984). See *Torres* v. *Director of the Div. of Employment Sec.*, 387 Mass. 776, 779-781 (1982). The discharge adjudication had no bearing on "[t]he critical factual issue . . . [of the teacher's] state of mind at the time of [her] misconduct," *id*. at 779, and could not preclude a finding by DES that the teacher's state of mind was not such as to disqualify her from securing benefits.[7]

*Order dismissing report affirmed.*

---

[7] We do not reach DES's argument that even if principles of issue preclusion were otherwise applicable, the provision in G. L. c. 151A, § 25 (*e*) (2), that a discharge must be "*shown to the satisfaction of the [DES] director to be attributable solely to deliberate misconduct in wilful disregard*" of the employer's interest is indicative of a legislative intent to vest initial fact-finding in benefits cases with DES, and that DES is therefore not obliged to give preclusive effect to adjudications by other tribunals. See Restatement (Second) of Judgments § 83(4)(b) (1982).