138                                 428 Mass. 138 (1998)

Commissioner of the Department of Employment and Training *v.* Dugan.

COMMISSIONER OF THE DEPARTMENT OF EMPLOYMENT AND
TRAINING & another[1] *vs.* JANET ROWE DUGAN.

Suffolk. May 4, 1998. - August 5, 1998.

Present (Sitting at Pittsfield): WILKINS, C.J., ABRAMS, GREANEY, FRIED, MARSHALL,
& IRELAND, JJ.

*Employment Security,* Misconduct by employee, Eligibility for benefits. *Collateral Estoppel. Judgment,* Preclusive effect. *Clerk of Court.*

The factual findings of a hearing officer in a disciplinary proceeding of the
Committee on Professional Responsibility for Clerks of Courts, which
were adopted by the committee and by the Supreme Judicial Court and
resulted in an order of that court removing a clerk-magistrate from her
position for wilful misconduct prejudicial to the administration of justice,
precluded the clerk-magistrate from contesting that she had committed
misconduct in wilful disregard of her employer's interest in a subsequent
proceeding before the Department of Employment and Training to
determine her eligibility for unemployment compensation benefits.
[141-146]

CIVIL ACTION commenced in the Boston Municipal Court
Department on February 7, 1996.

The case was heard by *Sally A. Kelly*, J.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Mary E. Murphy-Hensley*, Assistant Attorney General, for the
plaintiffs.

*Andrew Kisseloff* for the defendant.

IRELAND, J. The central issue of this appeal is whether the
factual findings adopted by this court in *Matter of Dugan*, 416
Mass. 461 (1993) (*Dugan I*), concerning the removal of the
defendant, Janet Rowe Dugan, from her position as clerk-
magistrate of the Northampton District Court (trial court)
preclude her from contesting that she had committed deliberate
misconduct in wilful disregard of her employer's interest in a
subsequent proceeding before the Department of Employment

---

[1] Administrative Office of the Trial Court.

and Training (department) to determine her eligibility for unemployment compensation benefits. A review examiner for the department gave preclusive effect to the factual findings from *Dugan I*, and, after hearing evidence limited to the defendant's state of mind, determined that she was disqualified from receiving benefits pursuant to G. L. c. 151A, § 25 (*e*) (2). The department's board of review (board) modified the decision of the review examiner and determined that the defendant was eligible to receive benefits. On judicial review, a Boston Municipal Court (BMC) judge affirmed the board. We now vacate the order and remand for the purpose of entering an order affirming the decision of the review examiner.

We summarize the record. In February, 1993, this court's Committee on Professional Responsibility for Clerks of Courts (committee) filed formal charges against the defendant, generally alleging that:

> "[she] had engaged in wilful misconduct in office, conduct prejudicial to the administration of justice, conduct unbecoming a clerk-magistrate that brings the office of clerk-magistrate into disrepute, and conduct that violated provisions of S.J.C. Rule 3:12, as appearing in 407 Mass. 1301 (1990), the Code of Professional Responsibility for Clerks of the Courts."

*Dugan I, supra* at 461-462. On March 2, 1993, this court ordered the defendant suspended from all powers and duties as clerk-magistrate until further order of this court. *Id.* at 462. A single justice of this court subsequently appointed a hearing officer to conduct a hearing and to determine any contested issues of fact.[2] *Id.* After a hearing, the hearing officer submitted his report to the committee, including detailed proposed findings of fact and his recommendation that the defendant be removed from office. *Id.* at 462-463. The defendant filed no objection to the proposed findings of fact and waived argument before the committee on the discipline that should be imposed. *Id.* at 463.

The committee adopted the hearing officer's proposed findings of fact and recommended to this court that the defendant be permanently removed from her position, pursuant to G. L. c.

---

[2]The hearing officer appointed by this court was James P. Lynch, a retired justice of the Superior Court Department of the Commonwealth. See *Matter of Dugan*, 416 Mass. 461, 462 (1993) (*Dugan I*).

211, § 4. *Id.* The committee accepted the hearing officer's reasoning that most of the various charges had been proven by clear and convincing evidence and concluded that "the uncontested facts overwhelmingly established that the [defendant] had engaged in misconduct as generally alleged, inimical to the public good, requiring that she be removed from office." *Id.* We agreed with the committee's recommendation, and on December 2, 1993, we ordered that the defendant be permanently removed from her position.[3] *Id.* at 463, 470.

In January, 1994, the defendant filed a claim for benefits with the department. The department initially informed the defendant that she was ineligible for benefits pursuant to G. L. c. 151A, § 25 (*e*) (2), because her termination was the result of her "deliberate misconduct in wilful disregard of the employing unit's interest." The defendant appealed, and a hearing was held before a review examiner of the department. At the hearing, counsel for the trial court asserted that the doctrine of collateral estoppel precluded the review examiner from making any determination regarding the defendant's acts or her state of mind. After the defendant objected, the review examiner ruled that he would give preclusive effect to the findings of fact as adopted by the committee (and by this court in *Dugan I*) concerning the defendant's conduct, but would take evidence concerning her state of mind. Counsel for the trial court then left the hearing, relying on the assertion of collateral estoppel.

The review examiner took testimony from the defendant concerning her state of mind and, on July 28, 1995, affirmed the department's initial denial of benefits. The review examiner concluded that the defendant "offered no testimony that dealt specifically with why she did commit these acts, that could offer mitigation for her conduct or lessen the wilfulness of her actions to a standard that did not rise to deliberate misconduct in wilful disregard of the employing unit's interest." The review examiner further concluded that the defendant "as a prudent and reasonable person, knew or should have known of the employer's expectations for the performance of her duties . . . and in the absence of any mitigation, it must be decided that the

---

[3]The defendant subsequently filed a motion for relief from judgment, arguing that this court did not have jurisdiction under G. L. c. 211, § 4, to remove her from office because she had status as a judicial officer of the Commonwealth. See *Matter of Dugan*, 418 Mass. 185, 186 (1994) (*Dugan II*). We rejected the defendant's argument. *Id.* at 187-190.

[defendant's] actions were deliberate misconduct in wilful disregard of the employing unit's interest."

The defendant appealed to the board. On January 11, 1996, following a prehearing conference, the board adopted the review examiner's findings of fact as based on substantial evidence, but determined that the review examiner had committed an error of law. The board concluded that the hearing officer had not conducted an inquiry into whether the claimant's conduct was "deliberate" or in "wilful disregard" of the trial court's interest and that collateral estoppel could not apply, because the issues before the hearing officer (and, ultimately, this court) were not identical to the issues before the board. The board then concluded that, because the trial court had "failed to furnish sufficient evidence of the [defendant's] state of mind," there was no basis on which to deny benefits to her.

On February 7, 1996, the department and the trial court filed a petition for judicial review of the board's decision in the BMC. On July 30, 1997, after a hearing, the BMC judge affirmed the board, concluding:

> "No proof of intent was required for the Supreme Judicial Court to conclude that [the defendant] should be removed from office . . . . Therefore the issue of intentional misconduct in wilful disregard of the employer's interest was not actually litigated and was not essential to the Supreme Judicial Court decision or its hearing officer's report."

The judge also concluded as a matter of law that the review examiner applied the incorrect standard of review. Citing to *Garfield* v. *Director of the Div. of Employment Sec.*, 377 Mass. 94, 97 (1979), the judge stated that G. L. c. 151A, § 25 (*e*) (2), depends on intentional misconduct on the part of the employee, not whether the employee knew or should have known of the employer's expectations. We transferred the appeal to this court on our own motion.

The central issue here is whether collateral estoppel principles permit the hearing officer's factual findings, adopted by the committee and by this court in *Dugan I*, to be applied defensively. It is well established that, in certain circumstances, collateral estoppel may be used defensively, even if the parties in the two adjudications are not identical. See *Fay* v. *Federal*

*Nat'l Mtge. Ass'n*, 419 Mass. 782, 789-790 (1995), quoting *Martin* v. *Ring*, 401 Mass. 59, 61 (1987); *Home Owners Fed. Sav. & Loan Ass'n* v. *Northwestern Fire & Marine Ins. Co.*, 354 Mass. 448, 455 (1968); Restatement (Second) of Judgments § 29 (1982). Collateral estoppel may be applied defensively if (1) there was a final judgment on the merits in the prior adjudication; (2) the party against whom estoppel is asserted was a party (or in privity with a party) to the prior adjudication; and (3) the issue in the prior adjudication is identical to the issue in the current adjudication. See *Fay*, *supra* at 790, quoting *Massachusetts Prop. Ins. Underwriting Ass'n* v. *Norrington*, 395 Mass. 751, 753 (1985). Additionally, the issue decided in the prior adjudication must have been essential to the earlier judgment. *Fay*, *supra*, citing *Bannister* v. *Commonwealth*, 411 Mass. 130, 131 (1991). The questions before us in this appeal are whether the issue decided in the prior adjudication is identical to the issue in the current adjudication and whether that issue was essential to the earlier judgment.

The standard for disqualifying the defendant from benefits pursuant to G. L. c. 151A, § 25 (*e*) (2), is whether there was "deliberate misconduct in wilful disregard of the employing unit's interest." This is an examination in two parts, requiring both deliberate misconduct and wilful disregard of the employer's interest. See *Jean* v. *Director of the Div. of Employment Sec.*, 391 Mass. 206, 208 (1984), quoting *Torres* v. *Director of the Div. of Employment Sec.*, 387 Mass. 776, 778-779 (1982); *Goodridge* v. *Director of the Div. of Employment Sec.*, 375 Mass. 434, 436 (1978). In applying this standard, we have long held that "the 'critical factual issue' in considering whether an employee's alleged misconduct is in wilful disregard of [the] employer's interest is the employee's state of mind at the time of the misconduct." *Jean*, *supra* at 209, quoting *Torres*, *supra* at 779. To determine the employee's state of mind, we require subsidiary findings of fact, which "take into account the worker's knowledge of the employer's expectation, the reasonableness of that expectation and the presence of any mitigating factors." *Garfield* v. *Director of the Div. of Employment Sec.*, 377 Mass. 94, 97 (1979).

The standard for removing a clerk-magistrate from office pursuant to G. L. c. 211, § 4, is whether "sufficient cause is shown therefor and it appears that the public good so requires." The defendant correctly argues that no proof of her state of

mind was required in *Dugan I*. From this, she concludes that the issue decided in *Dugan I* is not identical to the issue in the instant case and that the factual findings from *Dugan I* correspondingly have no preclusive effect here. We disagree.

Although the hearing officer was not required to make findings concerning the defendant's state of mind for purposes of removing her from her position under G. L. c. 211, § 4, he nonetheless made findings from which conclusions concerning the defendant's state of mind could be drawn. In particular, he found that the defendant had "knowingly falsified, destroyed, and failed to keep, true and accurate court records" and that she had "[d]ishonestly disposed of certain civil motor vehicle infractions . . . ." This finding is sufficient to warrant a conclusion that the defendant was of such a state of mind that her conduct constituted deliberate misconduct. The hearing officer further found that the defendant's conduct with respect to these matters was "wilful misconduct and prejudicial to the administration of justice; and that it constituted conduct unbecoming a clerk-magistrate that brings that office into disrepute." This finding is sufficient to warrant a conclusion that the defendant was of such a state of mind that her conduct was in wilful disregard of the employer's interest. These findings are also sufficient to conclude that there is no possibility that the defendant was simply involved in a "good faith lapse in judgment," *Garfield, supra,* or a "communication problem causing [the defendant], in good faith, to misunderstand the instructions given to [her]." *Jean, supra* at 209. Accordingly, the issue of the defendant's state of mind was addressed in *Dugan I*.

Although the hearing officer's findings do not echo the exact words of G. L. c. 151A, § 25 (*e*) (2), this is not necessary. In some cases, even if there is a lack of total identity between the issues involved in two adjudications, the overlap may be so substantial that preclusion is plainly appropriate. See Restatement (Second) of Judgments § 27 comment c (1982). This is such a case. The greater issue of the defendant's state of mind was decided in *Dugan I*. She is thus precluded from arguing any equal or lesser issues concerning her conduct or state of mind at a second adjudication. For purposes of preclusion, such issues are identical to the issues decided in *Dugan I*.

The defendant argues nonetheless that the issue of her state of mind was not essential to the judgment in *Dugan I* and concludes that preclusion therefore cannot apply. Again we

disagree. Although findings concerning the defendant's state of mind were not strictly essential to her removal, we have

> "expand[ed] the applicability of [collateral estoppel] to encompass certain findings not strictly essential to the final judgment in the prior action . . . . if it is clear that the issues underlying them were *treated as essential* to the prior case by the court and the party to be bound. Stated another way, it is necessary that such findings be the product of full litigation and careful decision." (Emphasis added.)

*Home Owners Fed. Sav. & Loan Ass'n* v. *Northwestern Fire & Marine Ins. Co.*, 354 Mass. 448, 455 (1968). One issue underlying the hearing officer's findings in *Dugan I* was the defendant's state of mind. We made a detailed review of the hearing officer's findings and concluded that he had "correctly characterized the [defendant's] conduct as wilful and prejudicial to the administration of justice." *Dugan I, supra* at 466. The findings were thus the product of full litigation and careful decision, and the issue of the defendant's state of mind correspondingly was treated as essential to the adjudication in *Dugan I*. As such, all the elements for applying collateral estoppel are met. The board and the judge erred as a matter of law in failing to give preclusive effect to the findings from *Dugan I*.

The defendant's final argument is that, even if collateral estoppel applies (as we conclude that it does), the review examiner applied the incorrect standard. The standard applied by the review examiner is of no import. Counsel for the trial court was correct in contending that collateral estoppel precluded the review examiner from making any determinations concerning the defendant's acts or her state of mind. The review examiner thus should not have taken evidence concerning the defendant's state of mind, and the review examiner's conclusion concerning the defendant's state of mind has no bearing on this case, regardless of the standard applied. It is only important that the review examiner reached the conclusion that the defendant was disqualified from receiving benefits pursuant to G. L. c. 151A, § 25 (*e*) (2), a conclusion that we now affirm.

This case is distinguishable from *Tuper* v. *North Adams Ambulance Serv., Inc., ante* 132 (1998), which we also decide today. In that case, the plaintiff had entered into a contract with

428 Mass. 138 (1998) 145

Commissioner of the Department of Employment and Training v. Dugan.

the defendant employer under which he could only be terminated for just cause. *Id.* at 133. The plaintiff was subsequently terminated because of the employer's allegations that he had been insubordinate and disobeyed a direct order. *Id.* The board found that the defendant was not disqualified from benefits pursuant to G. L. c. 151A, § 25 (*e*) (2), because from the plaintiff's subjective view, he had not been insubordinate or disobeyed a direct order. *Id.* at 133-134. However, we refused to allow the plaintiff to apply collateral estoppel offensively to preclude the employer from introducing evidence that the plaintiff had been insubordinate or disobeyed a direct order at the plaintiff's subsequent civil action for wrongful discharge. *Id.* at 135. The wrongful discharge action was based on whether the plaintiff had been discharged for just cause, which, in turn, depended in part on the employer's objective view whether the plaintiff had been insubordinate or disobeyed a direct order. *Id.* As such, we concluded that the issues at the two adjudications simply were not identical. *Id.* That is not the case here, where the first adjudication determined the greater issue of the defendant's conduct and state of mind. The defendant was thus precluded from arguing any equal or lesser issue concerning her conduct or state of mind at a second adjudication. Moreover, in *Tuper, supra* at 136, the proceedings to which the plaintiff sought to give preclusive effect were relatively informal, in keeping with the statutory purpose there, and the defendant had relatively little at stake. By contrast, the first proceeding in this case was most elaborate, with review carried to this court, and the defendant had the greatest incentive to litigate the issue there to the hilt.[4]

For the reasons stated above, we vacate the order of the BMC and remand for the purpose of entering an order affirming

---

[4]This case is thus distinguishable from *Director of the Div. of Employment Sec.* v. *Mattapoisett*, 392 Mass. 858 (1984), on which the board, the BMC, and the defendant have relied. In that case, the town's school committee terminated a tenured teacher on the basis of its findings of her "inefficiency, incapacity, conduct unbecoming a teacher . . . insubordination or other good cause." *Id.* at 859. Although deciding the case on a different issue, we concluded that these findings were not entitled to preclusive effect when the teacher subsequently applied for unemployment compensation benefits, because the issues in the two adjudications were not identical. *Id.* at 862-863. In contrast to the instant case, we concluded that there was no evidence that the school committee had made any findings that would warrant a conclusion that the teacher's conduct constituted deliberate misconduct or was in wilful disregard of the school committee's interest. *Id.* at 863-864.

the decision of the review examiner denying benefits to the defendant.

*So ordered.*