Connors, Thomas A., J.

I. INTRODUCTION

This matter came before the court on a complaint filed by Richard J. Cogliano (the “plaintiff’) against Michael A. Dixon (the “defendant”) on August 23, 2001, alleging legal malpractice. On November 5, 2002, the defendant moved for summary judgment asserting that the plaintiff lacked standing to bring the negligence action, and alternatively, that the defendant’s conduct met the standard of care. On January 14, 2003, this court (Brassard, J.) denied the motion because “there remain factual issues for trial.” On December 2, 2005, the defendant filed a renewed motion for summary judgment asserting the same grounds as in his previous motion, and also alleging that he is entitled to summary judgment based upon the June 15, 2004 decision of a Land Court case related to this lawsuit. On December 23, 2005, the plaintiff filed an opposition to defendant’s motion. For the following reasons, the defendant’s renewed motion for summary judgment is ALLOWED.

II. BACKGROUND

The following undisputed facts are viewed in the light most favorable to the plaintiff. On November 5, 1993, Dominic Cogliano (“Mr. Cogliano”), the father of the plaintiff, executed an indenture of trust establishing D&C Realty Trust. The trust document named Mr. Cogliano as the trustee, Dolores Griffin (“Ms. Griffin”) as the successor trustee, and both the plaintiff and Ms. Griffin as joint tenants of any remaining principal and income after Mr. Cogliano’s death.[2] On that same date, Mr. Cogliano conveyed the property at 7 Kennedy Park, Woburn, Massachusetts, to himself as trustee of the D&C Really Trust.
On November 15, 1995, Mr. Cogliano executed an indenture of trust establishing the Snowhill Manor Realty Trust and naming the plaintiff as trustee. In connection with the creation of the trust, Mr. Cogliano transferred title to his property at 56 Snowhill Street, Woburn, Massachusetts, to the plaintiff, as trustee of the Snowhill Manor Realty Trust.
Mr. Cogliano executed an Amendment to the D&C Really Trust on November 30, 1995, which eliminated the plaintiff as a beneficiary and stated that all principal and income of the trust was to be transferred and paid to Ms. Griffin upon his death. On August 21, 1997, Mr. Cogliano executed a last will and testament which provided that all of his personal and real property was to be divided equally between the plaintiff and Ms. Griffin upon his death.
On November 12, 1997, Mr. Cogliano and the plaintiff met with the defendant at the defendant’s office and requested that the defendant draft both a quitclaim deed and a last will and testament. While Mr. Cogliano and the plaintiff were at his office, the defendant drafted a quitclaim deed that reserved a life estate for Mr. Cogliano, and purported to convey the property at 7 Kennedy Park to the plaintiff, as trustee of the Snowhill Manor Realty Trust (“November 1997 deed”). The November 1997 deed, however, contained no reference to the D&C Realty Trust, and since it was executed by Mr. Cogliano only in his individual capacity and not in his capacity as trustee of the D&C Realty Trust, it was ineffective to convey title. The defendant notarized the November 1997 deed and later recorded it at the Middlesex Registry of Deeds. On November 19, 1997, Mr. Cogliano and the plaintiff returned to the defendant’s office, and Mr. Cogliano executed a last will and testament, leaving all his personal and real property to the plaintiff upon his death. On June 7, 2000, Mr. Cogliano died.
On March 19, 2001, Ms. Griffin commenced a summary process action against the plaintiff in Woburn District Court. Seven days later, Ms. Griffin, in her capacity as trustee of the D&C Realty Trust, executed a trustee certificate and a quitclaim deed conveying 7 Kennedy Park to herself. Following a jury trial in the summary process action, judgment was entered for Ms. Griffin. Meanwhile, in August of 2001, the plaintiff, as the trustee of the Snowhill Manor Realty Trust, filed a complaint against Ms. Griffin in the Land Court which sought a declaratory judgment reforming the November 1997 Deed. The plaintiff also appealed the District Court’s decision, and the Appellate Division vacated the decision and remanded the case. Griffin v. Cogliano, 2002 Mass.App.Dec. District Court Dept.: 55 (2002). The District Court in the remanded summary process proceedings stayed the matter until there was a final judgment in the Land Court proceeding.
On August 23, 2001, the plaintiff filed the complaint in this present action against the defendant alleging legal malpractice. On March 14, 2005, the parties filed a joint motion to stay this proceeding pending the decision of the Land Court case, and this court (Fishman, J.) allowed the motion.
*641 After a two-day bench trial, the Land Court (Lombardi, J.) issued a decision on June 15, 2004, which ruled that “plaintiff is not entitled to a reformation of the November 1997 deed and that defendant holds good record title to [7 Kennedy Park] free from any competing claim of plaintiff.” Cogliano, Trustee of the Snowhill Manor Realty Trust v. Griffin, Misc. Case No. 274224, p. 13 (Land Ct., Middlesex Div. June 15, 2004) (hereinafter “Land Court decision”). In reaching this decision, the Land Court made subsidiary findings of fact a portion of which stated the following:
On November 12, 1997, plaintiff took Mr. Cogliano to Dixon’s office. This appointment was the first time Dixon had met Mr. Cogliano. During this meeting, plaintiff informed Dixon as to how Mr. Cogliano wanted to dispose of his property. Dixon then had a conversation with Mr. Cogliano alone to confirm Mr. Cogliano’s intentions.[fn 10] Although Mr. Cogliano gave Dixon a copy of the 1968 deed, a copy of Mrs. Cogliano death certificate, and a tax closing letter, Mr. Cogliano did not give Dixon a copy of the D&C trust. Based upon the documents provided, Dixon drafted a deed that included a life estate reserved for Mr. Cogliano, which he had requested. By the end of the meeting, Mr. Cogliano signed a deed, individually and not as trustee of the D&C trust, that purported to convey locus to plaintiff, as trustee of the Snowhill trust, for One Dollar consideration (November 1997 deed). Dixon then notarized the deed, and later recorded instrument in book 27889, at page 45 (exhibit 14).[fn 11]
[fnlO]Although plaintiff testified that Mr. Cogliano was never alone with Dixon, I accept the recollection of Dixon as to the meeting. According to Dixon, plaintiff was in another part of the office during the time he met alone with Mr. Cogliano. The fact that plaintiff was nearby in another room could explain plaintiffs testimony.
[fn 11 plaintiff claims that he informed Dixon that locus was in the D&C trust and gave Dixon a copy of the trust. Dixon denies having received a copy of the D&C trust prior to drafting the November 1997 deed. I credit the testimony of Dixon.
Land Court decision, p. 7, ¶29.
In his renewed motion for summary judgment, the defendant contends that the plaintiff is collaterally estopped from relitigating these material facts that were found against him by the Land Court.
III. DISCUSSION I. Standard
The Court will grant summary judgment when there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Comm’r of Corr., 390 Mass. 419, 422 (1983); Cmty. Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the moving party is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opponent’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. Gen. Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party establishes the absence of a triable issue, the party opposing the motion, must respond and allege specific facts establishing the existence of a genuine issue of material fact. Pederson, 404 Mass. at 17. If the moving party submits evidence that indicates that the plaintiff cannot demonstrate the essential elements of a claim, summary judgment should be granted. See Kourouvacilis, 410 Mass. at 711-12.
II. Application A. Issue Preclusion
The doctrine of issue preclusion, also known as collateral estoppel, prevents the relitigation of an issue that has been decided in a prior adjudication. Heacock v. Heacock, 402 Mass. 21, 23 n.2 (1988). Invocation of the doctrine requires that “an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment.” Martin v. Ring, 401 Mass. 59, 61 (1987); see also Cousineau v. Laramee, 388 Mass. 859, 863 n.4 (1983); Restatement (Second) of Judgments §27 (1982). Additionally, “the party against whom estoppel is asserted [must have been] a party (or in privily with a party) to the prior adjudication ... and ... the issue in the prior adjudication [must be] identical to the issue in the current adjudication.” Comm’r of Dep’t of Employment & Training v. Dugan, 428 Mass. 138, 142 (1998).
It is well established that issue preclusion may be asserted defensively by a defendant who was not a party in the first action against a party who was the plaintiff in the first action. Id. This is precisely the situation in the present case. The defendant asserts that the plaintiff is collaterally estopped from relitigating certain subsidiary facts that were found against him by the Land Court, during a proceeding in which the defendant was not a party. In opposition, the plaintiff contends that the defendant has failed to establish the necessary prerequisites of issue preclusion, including that the issues were actually litigated, essential to the judgment, final, and identical to the issues in the present action. Moreover, the plaintiff asserts that even if the defendant has established the prerequisites, the doctrine is inapplicable because the plaintiff faced a significantly higher burden of persuasion in the Land Court proceeding.
*642 1.Were the Issues of Fact Actually Litigated?
In determining whether an issue of fact or law has been actually litigated, the court must consider whether the issue was “ ‘subject to an adversary presentation and consequent judgment’ that was not ‘a product of the parties’ consent...” Jarosz v. Palmer, 436 Mass. 526, 531 (2002), quoting Keystone Shipping Co. v. New England Power Co., 109 F.3d 46, 52 (1st Cir. 1997), quoting J. Friedenthal, Civil Procedure §14.11 at 672, 673 (1985). Here, the plaintiff commenced a declaratory judgment action in the Land Court, contending that the defendant’s negligence caused a mistake in the drafting of the November 1997 deed which warranted its reformation. During the trial, the plaintiff testified that he and Mr. Cogliano provided the D&C Really Trust document to the defendant during their November 12, 1997 meeting, and informed the defendant during the meeting that Mr. Cogliano held the property at 7 Kennedy Park as the trustee of the D&C Really Trust. Although not a party to the Land Court proceeding, the defendant also testified, providing a contradictory version of what occurred during the November 12, 1997 meeting.
After a two-day trial with four witnesses and twenty-two exhibits, and post-trial memoranda submitted by both parties, the Land Court ruled that the plaintiff was not entitled to reformation of the November 1997 deed. In reaching this conclusion, the Land Court, as the trier of fact, made subsidiary findings that addressed what had transpired during the November 12, 1997 meeting. In these subsidiary findings, the court found that neither the plaintiff nor Mr. Cogliano informed the defendant of the existence of the D&C Realty Trust or provided the defendant with a copy of the D&C Realty Trust document prior to the defendant’s drafting of the November 1997 deed. Land Court decision, p. 7, ¶29. The Land Court also found that Mr. Cogliano met with the defendant alone for at least a portion of the November 12, 1997 meeting. Id. Because these factual issues were sharply contested by both parties, and because they were determined by the Land Court’s subsidiary findings, the factual issues were actually litigated for the purposes of issue preclusion.
2.Were the Issues of Fact Essential to the Judgment?
A second requirement under the doctrine of issue preclusion is that the issue of fact must have been “treated as essential to the prior case by the court and the party to be bound. Stated another way, it is necessary that such findings be the product of full litigation and careful decision.” Comm’r of the Dep’t of Employment & Training, 428 Mass. at 144; see also Alba v. Raytheon Co., 441 Mass. 836, 843 (2004), quoting Green v. Brookline, 53 Mass.App.Ct. 120, 126-27 (2001). As previously noted, the plaintiff presented evidence and testimony in support of his contention that the defendant’s negligence caused a mistake in drafting the November 1997 deed. The plaintiffs contention rested exclusively on his claim that he and Mr. Cogliano made the defendant aware of the D&C Realty Trust. In making its subsidiary findings, however, the Land Court credited the defendant’s testimony, and in reaching its ultimate determination that the plaintiff had not met his burden of proof, the Land Court relied upon these underlying factual findings. In its decision, the Land Court stated: “Considering all the facts presented, I do not find plaintiffs story to be the more plausible one . . . Consequently, I cannot find that plaintiff has convinced me as to the merits of his claim by clear, full, and decisive evidence free from doubt or uncertainty.” Land Court decision, p. 12. Thus, the plaintiff had a “full and fair opportunity to litigate” these factual issues at trial, and the factual findings of the Land Court served as the basis for its decision on the ultimate issue. Alba, 441 Mass. at 844.
3.Was the Land Court’s Determination Final?
For the purposes of issue preclusion, a determination does not have to be final in the traditional sense. Tausevich v. Bd. of Appeals of Stoughton, 402 Mass. 146, 148 (1988). Rather, the “prior adjudication” must only be “sufficiently firm to be accorded conclusive effect.” Restatement (Second) of Judgments §13 (1982). A decision is considered “sufficiently firm” when “the parties were fully heard, the judge’s decision is supported by a reasoned opinion, and the earlier opinion was subject to review or was in fact reviewed.” Jarosz, 436 Mass. at 533-34 (2002), quoting Tausevich, 402 Mass. at 149.
In the present case, even though the plaintiff has appealed the Land Court decision and the decision remains subject to appellate review, the subsidiary factual findings of the Land Court represent a final judgment for the purposes of issue preclusion. O’Brien v. Hanover Ins. Co., 427 Mass. 194, 201 (1998) (“[A] trial court judgment is final and has preclusive effect regardless of the fact that it is on appeal”). The plaintiff was fully heard over the course of a two-day trial, during which he presented testimony and exhibits for the purpose of persuading the court, as the fact-finder, to accept his version of the events. Based upon its assessment of credibility, the Land Court concluded that its factual findings had adequate support in the evidence which it heard.
Moreover, while the Land Court decision has not yet undergone appellate review, the subsidiary findings of fact, which are unequivocally set forth in the court’s decision, would only be reversible if they were found to be “clearly erroneous.” See New England Canteen Serv., Inc. v. Ashley, 372 Mass. 671, 675 (1977) (“In deciding whether a judge’s subsidiary finding of fact is clearly erroneous, it must be emphasized that it is the trial judge who, by virtue of his firsthand view of the presentation of evidence, is in the best position to judge the weight and credibility of the evidence”); *643 Sonesta Int'l Hotels Corp. v. Cent. Fla. Invs., Inc., 47 Mass.App.Ct. 154, 158 (1999) (stating that a judge’s factual findings will be accepted absent clear error). Notwithstanding that appellate review has not yet occurred and that the decision is not final in the strictest sense, it would be unreasonable to prevent the application of issue preclusion based on finality, because this court would be forced to postpone this action “for a possibly lengthy period of time until the first action has gone to a complete finish.” Restatement (Second) of Judgments §13, Comment g (1982). When the prior determination is adequately firm, as it is here, “the wisest course is to regard the prior decision of the issue as final for the purpose of issue preclusion without awaiting the end judgment.” Id.
4. Are the Issues of Fact Identical?
Lastly, the factual issues determined by the Land Court are identical to the factual contentions that form the basis of the plaintiffs malpractice claim in the present case. See Alba, 441 Mass. at 842-43; Comm’r of Dep’t of Employment & Training, 428 Mass. at 142 (stating that the issue in the prior adjudication must be “identical to the issue in the current adjudication”). In both proceedings, the plaintiffs cause of action relies on the same factual allegation that he and Mr. Cogliano informed the defendant of the existence of the D&C Realty Trust and provided him with the trust document during their November 12, 1997 meeting. While the ultimate issue for decision differed in the two proceedings, the factual issues are, nonetheless, identical. Comm’r of Dep’t of Employment & Training, 428 Mass. at 143 (“In some cases, even if there is a lack of total identity between the issues involved in two adjudications, the overlap may be so substantial that preclusion is plainly appropriate”).

B. The Differing Burdens of Persuasion

The plaintiff contends that the Land Court’s subsidiary findings should have no preclusive effect upon this present case because he was required to bear a higher burden of persuasion in the Land Court proceeding. In Massachusetts, relitigation of an issue in a subsequent proceeding is not precluded when “(t]he party against whom preclusion is sought had a significantly heavier burden of persuasion with respect to the issue in the initial action than in the subsequent action.” Jarosz, 436 Mass. at 532, quoting Restatement (Second) of Judgments §28(4) (1982).
This exception to the application of issue preclusion has arisen most often in the situation in which a defendant has attempted to use his acquittal in a criminal proceeding as a collateral estoppel bar in a subsequent civil case. See, e.g., One Lot Emerald Cut Stones & One Ring v. United States, 409 U.S. 232, 234-35 (1972); Helvering v. Mitchell 303 U.S. 391, 397 (1938). In such a situation, collateral estoppel would not apply because an acquittal is “merely ... an adjudication that the proof was not sufficient to overcome all reasonable doubt of the guilt of the accused.” Helvering, 303 U.S. at 397. Although this is the traditional context in which the exception has appeared, the exception equally would apply in a situation involving two successive civil cases, one of which required a heightened burden of persuasion. See Jarosz, 436 Mass. at 532.
In the majority of civil cases, including the present one, the burden of persuasion is a simple preponderance of the evidence. The Land Court action seeking the reformation of a deed, however, falls within that category of cases in which the plaintiff bears the heightened burden of proof by clear and convincing evidence. See, e.g., Santosky v. Kramer, 455 U.S. 745, 769-70 (1982) (action to permanently terminate the parental rights to custody of a child due to unfitness); C.C. v. A.B., 406 Mass. 679, 686-87 (1990) (paternity actions by a putative father where the child is bom to a woman married to another man); Berman v. Sandler, 379 Mass. 506, 509 (1980) (action to reform a written document on the grounds of mistake); Foley v. Coan, 272 Mass. 207, 209-10 (1930) (action to establish that a gift was made causa mortis). Acting under the general principles of equity jurisprudence, the Land Court ultimately found that the plaintiff had failed to convince the court “as to the merits of his claim by clear, full, and decisive evidence free from doubt or uncertainty." Land Court decision, p. 12. As a result, the Land Court refused to reform the November 1997 deed.
While it is tme that the ultimate decision of the Land Court was based on the heightened standard of clear and convincing evidence, the court’s threshold factual findings were based upon the lower standard of fair preponderance of the evidence. Unlike the context in which the exception commonly arises — in a criminal proceeding in which the finder of fact has rendered only a general verdict of not guilty — the Land Court has made subsidiary findings of fact that were separate and distinct from its ultimate decision. When the court is serving in this role as the trier of fact, its subsidiary factual findings are based upon the preponderance of the evidence standard, even in those cases in which it must decide the ultimate issue based upon a heightened clear and convincing standard. In parental unfitness cases, for example, while the ultimate judgment is based upon an enhanced standard of clear and convincing evidence, the quantum of proof required for the court to reach its subsidiary findings is a preponderance of the evidence. See Adoption of Quentin, 424 Mass. 882, 886 (1997) (stating that the court must make specific factual findings that “must be proved by a fair preponderance of the evidence”); Custody of Two Minors, 396 Mass. 610, 619 (1986); Adoption of Leland, No. 05-P-898 (Mass.App.Ct. Feb. 24, 2006) (slip opinion involving determination of parental unfitness). Once the court has made its subsidiary factual findings based upon the fair preponderance standard, only then is the enhanced stan *644 dard applied as to the ultimate decision. Id. In other words, at that stage, the trier of fact must determine whether all of the factual findings, when considered together, prove clearly and convincingly the ultimate issue. Id.
While the ultimate issue for determination in the Land Court proceeding required a higher level of proof, the standard which governed the determination of the underlying factual contentions was the same as the preponderance standard applicable in the plaintiffs present lawsuit. Given this congruity which governs the factual findings in both cases, that proof of the ultimate issue was subject to the clear and convincing evidence standard in the Land Court proceeding, does not bar the application of the doctrine of issue preclusion in this case.
C. Effect on this Proceeding
The decision of the Land Court conclusively established that neither the plaintiff nor Mr. Cogliano provided the defendant with a copy of the D&C Realty Trust document or informed the defendant of the existence of the D&C Realty Trust. These subsidiary factual findings are precisely the factual contentions that form the basis of the plaintiffs malpractice claim in this case. With these material facts conclusively established in the defendant’s favor and no longer in dispute, the plaintiff is unable to prove the essential elements of his malpractice claim. Consequently, the defendant is entitled to judgment as a matter of law.[3]
IV. ORDER
For the foregoing reasons, it is hereby ORDERED that summary judgment enter for defendant Michael A. Dixon.

 The plaintiff and Ms. Griffin are brother and sister and children of Mr. Cogliano.

 The defendant also contends that the he did not owe any duty to the plaintiff because no attorney-client relationship existed between them. Given the ruling that the factual findings in the Land Court litigation are fatal to the plaintiffs legal malpractice claim, it is unnecessary to deal with this issue.