423 Mass. 805                                    805

Still v. Commissioner of the Department of Employment and Training.

ANNIE K. STILL vs. COMMISSIONER OF THE DEPARTMENT OF
EMPLOYMENT AND TRAINING.

Hampden. October 8, 1996. - November 20, 1996.

Present: WILKINS, C.J., ABRAMS, GREANEY, & FRIED, JJ.

*Employment Security,* Eligibility for benefits, Misconduct by employee.
*Statute,* Construction. *Words,* "Knowing violation."

Discussion of the meaning of the term "knowing violation" of an employer's
rule or policy, appearing in G. L. c. 151, § 25(e)(2), added by St. 1992,
c. 26, § 19, which can provide the basis for the denial of unemployment
benefits to a discharged employee. [808-813]
This court concluded that, in the context of G. L. c. 151, § 25(e)(2), "know-
ing" implies some degree of intent, and that a discharged employee is
not disqualified from receiving benefits unless it can be shown that, at
the time of the act, the employee was consciously aware that the conse-
quence of the act being committed was a violation of an employer's rea-
sonable rule or policy. [813]
The finding of a hearing examiner of the Department of Employment and
Training that a nurse's aide had not acted deliberately in her spontane-
ous emotional reaction in swearing at a patient who had for some period
verbally abused her, supported the conclusion that, in the circumstances,
the aide's discharge was not attributable to her knowing violation of her
employer's reasonable and uniformly enforced rule or policy prohibiting
abusive behavior toward patients, with the consequence that the em-
ployee was not disqualified from unemployment benefits under G. L.
c. 151A, § 25(e)(2). [814-816]

CIVIL ACTION commenced in the Springfield Division of
the District Court Department on May 24, 1993.

The case was heard by *Nancy Dusek-Gomez,* J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Macy Lee,* Assistant Attorney General, for the defendant.

*Peter R. Benjamin* for the plaintiff.

*Cynthia L. Amara & Stephen S. Ostrach* for Associated
Industries of Massachusetts & another, amici curiae, submit-
ted a brief.

*Donald J. Siegel, Allan G. Rodgers, & Monica Halas* for the Massachusetts AFL-CIO & others, amici curiae, submitted a brief.

GREANEY, J. The plaintiff, Annie K. Still, was employed as a senior nurse's aide at a nursing home. On January 12, 1993, she was discharged by her employer for swearing at a patient, in violation of the employer's patient care policies and rules for employee conduct. Still filed a claim for unemployment benefits with the Department of Employment and Training (department), and a department claims service representative determined that she was disqualified from receiving such benefits. She requested a hearing before a department review examiner, who concluded that Still had knowingly violated a reasonable and uniformly enforced company rule or policy, and was therefore disqualified from receiving benefits under the provisions of G. L. c. 151A, § 25 (e) (2) (1994 ed.).[1] Still applied for further consideration by the department's board of review (board), which also denied her application. She then sought judicial review of the decision.[2] A District Court judge upheld the board's decision. Still appealed, and the Appeals Court vacated the District Court's judgment and held that Still's conduct did not, as matter of law, disqualify her from receiving benefits. 39 Mass. App. Ct. 502 (1995). We granted the application of the commissioner of the department (commissioner) for further appellate review. We conclude that Still is not disqualified from receiving unemployment benefits and reverse the judgment of the District Court.

The facts concerning Still's employment and discharge, as

[1]General Laws c. 151A, § 25 (e) (2) (1994 ed.), provides that benefits shall not be paid to an individual who has left work "by discharge shown to the satisfaction of the commissioner [of the department] by substantial and credible evidence to be attributable to deliberate misconduct in wilful disregard of the employing unit's interest, or to a knowing violation of a reasonable and uniformly enforced rule or policy of the employer, provided that such violation is not shown to be as a result of the employee's incompetence."

[2]The review examiner is the authorized representative of the commissioner, and the review examiner's decision is therefore the commissioner's decision. G. L. c. 151A, § 39 (b) (1994 ed.). If the board denies the application for review, the commissioner's decision is treated as that of the board and is subject to judicial review. G. L. c. 151A, §§ 41-42 (1994 ed.). See *Jones* v. *Director of the Div. of Employment Sec.*, 392 Mass. 148, 149 (1984).

contained in the examiner's findings, and in testimony which he found to be credible, are not in dispute. Still is an African-American woman who had been employed for four years at the nursing home, and was a senior nurse's aide at the time of her discharge. Her employer had a written policy, contained in an employee handbook, that patients were to be free from mental and physical abuse, and that employees could be discharged for inconsiderate treatment of patients and for rude, discourteous, or uncivil behavior. Still was aware of these policies; she had received a copy of the handbook, and had attended training sessions on dealing with combative and demanding patients. She was aware that other employees had been discharged for patient abuse. Before the incident, Still herself had never been accused of, or disciplined for, any abusive behavior.

On Saturday, January 9, 1993, Still worked a double shift, beginning at 7 A.M. During the morning, she went to provide care to a male patient who was known by staff and administrators for being angry and argumentative, and for often uttering racial slurs. The patient called Still names and ordered her to leave the room; she did so, and reported the situation to her supervisor. For the rest of the day, the patient made abusive remarks to Still and to other employees who entered or passed by his room. In order to avoid contact with the patient, Still changed assignments so that another aide would provide the patient's scheduled afternoon care. About 4 P.M., Still entered the patient's room to care for his roommate; the curtain between the patients was partially closed. The patient called Still a "fat, lazy, black bitch." Still responded by calling the patient a "mother fucker."

Two days later, Still's outburst was reported to the employer by another employee. When Still arrived for work the next day (January 12, 1993), she was discharged for "swearing at a [patient]."

At issue is whether the conduct for which Still was discharged disqualifies her from receiving unemployment benefits, in accordance with c. 151A, § 25 (*e*) (2). That statute provides that an employee is disqualified if substantial and credible evidence shows that the discharge was attributable either to "deliberate misconduct in wilful disregard of the employing unit's interest," or to "a knowing violation of a reasonable and uniformly enforced rule or policy of the

employer, provided that such violation is not shown to be as a result of the employee's incompetence." The examiner concluded that Still's action, although constituting misconduct, had not been "deliberate," because "it was not done with forethought," and that the conduct had been "provoked" by the patient. Nonetheless, the examiner concluded that Still had "knowingly violated a reasonable and uniformly enforced company rule or policy," and was disqualified from receiving benefits. In support of this conclusion, the examiner stated that Still "knew of the rule or policy by having been issued a copy of [such rules] and having been instructed regarding them and avoidance of violations thereof."

Still contends that this decision was based on an erroneous interpretation of the statutory term "knowing violation." She argues that the statute requires a finding of intent on the part of the employee to violate the employer's rule, and argues further that the examiner's decision that she had "knowingly violated" company policy is contradicted by his conclusion that her action had not been "deliberate" or "done with forethought." The commissioner contends that Still's admission (that she had prior knowledge of the employer's policy and understood the consequences of violating it) is sufficient to establish that she "knowingly violated the policy," and that the commissioner may disqualify an employee on this basis .without a showing that the employee intended to violate the rule or policy (as contrasted with the "deliberate misconduct" test, which does require a finding of intent). The statutory meaning of "knowing violation" is, thus, the sole legal issue which we must address.[3]

We have not, until now, considered the meaning of the

---

[3]On appeal, Still has made an additional legal argument: that the employer's rule, while reasonable on its face, was not reasonable as applied to her, considering the absence of any prior disciplinary record and the particular circumstances of the incident that led to her discharge. Still cited the department's Service Representatives Handbook § 1310 (B) (2) (rule may be unreasonable as applied if circumstances of an "unusual or urgent and compelling nature" exist). See also St. 1993, c. 263, § 18, which directed department to review and amend its policies interpreting G. L. c. 151A, § 25 (e) (2), so as to clarify that "[an employer's] rules must be reasonable in themselves and must not produce unreasonable results when measured against the objective circumstances surrounding their violation." The Appeals Court declined to address this argument, as it had not been raised below. We likewise shall not address this issue, for the same reason. See 39 Mass. App. Ct. 502, 503-504 n.3 (1995).

423 Mass. 805 809

Still *v.* Commissioner of the Department of Employment and Training.

term "knowing violation" in § 25 (*e*) (2).[4] The "knowing violation" test was added to the statute by St. 1992, c. 26, § 19; prior to that amendment, the "deliberate misconduct" test had been the only basis on which a discharged employee could be disqualified from receiving benefits. The meaning of "knowing violation" must be examined in the context of established principles underlying the unemployment insurance system, as well as our prior decisions interpreting the "deliberate misconduct" test.

The unemployment compensation statute itself directs that G. L. c. 151A "shall be construed liberally in aid of its purpose, which purpose is to lighten the burden which now falls on the unemployed worker and his family." G. L. c. 151A, § 74 (1994 ed.). Benefits are to be paid to "persons who are out of work and unable to secure work through no fault of their own." *Howard Bros. Mfg. Co.* v. *Director of the Div. of Employment Sec.*, 333 Mass. 244, 248 (1955). If an employer contests the eligibility of a discharged employee to receive unemployment benefits, the issue is not whether the employee had been discharged for good cause, but whether the Legislature intended to deny benefits in the circumstances presented by the case. See *Goodridge* v. *Director of the Div. of Employment Sec.*, 375 Mass. 434, 436 (1978). Even if an employee leaves a position on his own initiative, he is still not disqualified if he can show "good cause for leaving attributable to the employing unit or its agent," G. L. c. 151A, § 25 (*e*) (1), or can establish that "his reasons for leaving were for such an urgent, compelling and necessitous nature as to make his separation involuntary." G. L. c. 151A, § 25 (*e*), second par. In accordance with the directives of § 74, the grounds for disqualification in § 25 (*e*) (2) are considered to be exceptions or defenses to an eligible employee's right to benefits, and the burdens of production and persuasion rest with the employer. See *Cantres* v. *Director of the Div. of Employment Sec.*, 396 Mass. 226, 229-232 (1985). See also *Emerson* v. *Director of the Div. of Employment Sec.*, 393 Mass. 351, 352

[4]In two related cases involving the application of the "knowing violation" test, it was unnecessary to determine whether a rule had been violated "knowingly," because there was a lack of evidence that the rule had been violated at all. See *Thomas O'Connor & Co.* v. *Commissioner of the Dep't of Employment & Training (No. 2)*, 422 Mass. 1007 (1996); *Thomas O'Connor & Co.* v. *Commissioner of the Dep't of Employment & Training (No. 1)*, 422 Mass. 1007 (1996).

(1984) (Any "statutory opaqueness" should be construed favorably to the unemployed worker).

Prior to the 1992 amendment to § 25 (*e*) (2), "deliberate misconduct in wilful disregard" of an employer's interest was the only basis for disqualifying a discharged employee from receiving benefits. The phrase denotes "intentional conduct or inaction which the employee knew was contrary to the employer's interest." *Goodridge, supra* at 436. In decisions interpreting this provision, we have concluded that the Legislature's purpose was "to deny benefits to a claimant who has brought about his own unemployment through intentional disregard of standards of behavior which his employer has a right to expect. When a worker is ill-equipped for his job or has a good faith lapse in judgment or attention, any resulting conduct contrary to the employer's interest is unintentional; a related discharge is not the worker's intentional fault, and there is no basis under § 25 (*e*) (2) for denying benefits." *Garfield* v. *Director of the Div. of Employment Sec.*, 377 Mass. 94, 97 (1979). The denial of benefits therefore requires evidence as to "the claimant's state of mind in performing the acts that cause his discharge." *Id.* The provision requires a two-part analysis: both "deliberate misconduct" and "wilful disregard" of the employer's interest must be shown in order to disqualify the employee, and the employee's state of mind at the time of the misconduct is an issue for both parts. *Jean* v. *Director of the Div. of Employment Sec.*, 391 Mass. 206, 208-209 (1984). An employee may engage in deliberate misconduct, and yet do so without engaging in wilful disregard of the employer's interest, and consequently not be disqualified from benefits. See *Jones* v. *Director of the Div. of Employment Sec.*, 392 Mass. 148, 149-151 (1984) ("wilful disregard" not shown where employee who refused to follow a supervisor's order believed that other work he was performing was of "paramount importance" to his employer); *Jean, supra* at 209 (state of mind for "wilful disregard" not shown, where employee who lacked proficiency in English may have misunderstood instructions or consequences of failing to follow them). To determine whether the employee's state of mind demonstrated "wilful disregard" of the employer's interest, the factfinder must "take into account the worker's knowledge of the employer's expectation, the reasonableness of that expectation and the presence of any mitigating fac-

tors." *Garfield, supra* at 97. See *Shepherd* v. *Director of the Div. of Employment Sec.*, 399 Mass. 737 (1987); *Wedgewood* v. *Director of the Div. of Employment Sec.*, 25 Mass. App. Ct. 30 (1987).

The 1992 amendment to G. L. c. 151A, § 25 (*e*) (2), created a new basis for disqualification: a "knowing violation of a reasonable and uniformly enforced rule or policy of the employer, provided that such violation is not shown to be as a result of the employee's incompetence." A key issue for interpretation is how the Legislature intended the "knowing violation" test to be differentiated from the "deliberate misconduct" test, particularly with regard to their respective state-of-mind requirements. The commissioner contends that requiring the showing of an intent to violate the employer's rule or policy would make the "knowing violation" test indistinguishable in its effect from the "deliberate misconduct" test, a result that would be contrary to the Legislature's purpose in adding the new provision. Still argues that, if the Legislature had wished the "knowing violation" provision to apply to unintentional conduct, it would have done so more explicitly. (Moreover, it is observed that the Legislature did not use such wording as "a violation of a known rule.") Still further contends that "knowing" means "intentional," and a state of mind requirement therefore exists for the first element of both disqualifying tests. The crucial difference between the two tests, Still argues, is that a subjective state of mind inquiry must be made to satisfy the "wilful disregard" element of the "deliberate misconduct" test, but the employer need only prove the objective existence of "a reasonable and uniformly enforced rule [or policy]" to establish the second element of the "knowing violation" test. In her particular case, Still points out that no finding was made that she intentionally violated the employer's policy; indeed, the examiner found that her actions were *not* deliberate, and were "provoked" by the patient.

Legislative history of the 1992 amendment to § 25 (*e*) (2) suggests that the Legislature intended to broaden the grounds for benefit disqualification, but did not intend to eliminate altogether the state of mind requirement in the existing stat-

ute.[5] The legislative record does not indicate the intended meaning of the term "knowing violation" in § 25 (*e*) (2).[6] For guidance, we may consider the ordinary usage of the word "knowing," as well as the interpretation of the phrase "knowing violation" as it is used in other statutory contexts. "Words and phrases shall be construed according to the common and approved usage of the language; but technical words and phrases and such others as may have acquired a peculiar and appropriate meaning in law shall be construed and understood according to such meaning." G. L. c. 4, § 6, Third (1994 ed.).

An act is done "knowingly" if it "is [the] product of conscious design, intent or plan that it be done, and is done with awareness of probable consequences." Black's Law Dictionary 872 (6th ed. 1990).[7] Consistent with this definition, the term "knowing violation," when used in other civil statutes, has required a showing of intent on the actor's part. For example, decisions construing the multiple damages provi-

---

[5]The "knowing violation" provision was absent from the original bill introduced in the House of Representatives to modify the unemployment insurance system. 1992 House Doc. No. 2935 at 10. After the House passed the bill, the Senate adopted an amendment that would have replaced the existing "deliberate misconduct" provision with less specific language: "misconduct connected with the individual's work." 1992 Senate Doc. No. 1464 at 14. A joint conference committee then proposed a version of the bill which restored the "deliberate misconduct" language and also contained the new "knowing violation" provision. This version was adopted by both houses. The Governor returned the bill unsigned with suggested changes, including a return to the broader language of the proposed Senate amendment, but both houses rejected the Governor's proposals and ultimately passed the bill over the Governor's veto. See 1992 House Doc. No. 5445.

[6]Still asserts that the Massachusetts provision was based on an identically worded Indiana statute, Ind. Code Ann. § 22-4-15-1 (*d*) (2) (Burns Supp. 1996). Even if the assertion is correct, the differences in structure and coverage between the Indiana and Massachusetts statutes mean that Indiana judicial interpretations of that State's statute are not helpful to us. See 39 Mass. App. Ct. 502, 504 n.4 (1995). We note that Kentucky also uses the same wording. Ky. Rev. Stat. Ann. § 341.370 (Michie 1995). Other States have, by judicial interpretation, subsumed "knowing violation" within the category of "misconduct," "deliberate" misconduct, or "just cause." See *Kehl* v. *Board of Review of the Indus. Comm'n of Utah,* 700 P.2d 1129, 1132, 1135 (Utah 1985).

[7]See Restatement of Torts (Second) § 8A (1965): "The word 'intent' is used . . . to denote that the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it."

423 Mass. 805                                                813

Still *v.* Commissioner of the Department of Employment and Training.

sions of G. L. c. 93A (1994 ed.) have imposed such damages for "wilful" or "knowing" violations, equating the former with reckless conduct and the latter with intentional acts. See *International Fidelity Ins. Co.* v. *Wilson,* 387 Mass. 841, 854-855 (1983); *Linthicum* v. *Archambault,* 379 Mass. 381, 388 (1979); *Computer Sys. Eng'g, Inc.* v. *Qantel Corp.,* 571 F. Supp. 1365, 1373-1377 (D. Mass. 1983). Decisions interpreting discrimination statutes have similarly indicated that a "knowing violation" requires an intent to violate the law, and not merely an intent to commit the act that is a violation. See *Andover Newton Theological Sch., Inc.* v. *Continental Cas. Co.,* 409 Mass. 350, 351-352 (1991). See also *Fontaine* v. *Ebtec Corp.,* 415 Mass. 309, 321-322 (1993). In view of the meaning given to the term "knowing," it would be an anomalous result to subject a party to the severe sanction of multiple damages for intentional conduct, but to disqualify a person from unemployment benefits for a violation of an employer's rule or policy that is unintentional. We conclude that, in the context of § 25 (*e*) (2), "knowing" implies some degree of intent, and that a discharged employee is not disqualified unless it can be shown that the employee, at the time of the act, was consciously aware that the consequence of the act being committed was a violation of an employer's reasonable rule or policy. This principle was aptly stated by the Appeals Court in its ultimate holding:

"[W]hat must be proved at an irreducible minimum is intentionality in the form of (a) consciousness on the part of the employee of what it is she is doing and (b) awareness that she is in the process of violating a rule or policy of the employer. The dictionary definitions and decisional precedent agree in according 'knowing' that basic intentional, cognitive content. It cannot apply, as contended by the employer and determined by the review examiner, to conduct that is unintentional by virtue of being involuntary, accidental, or inadvertent."[8] 39 Mass. App. Ct. at 510.

---

[8]The Appeals Court states that the commissioner has adopted this interpretation of "knowing violation," quoting language in a letter from the commissioner to Senator Robert D. Wetmore: "[T]he employee must be found to have been 'aware that he or she was engaging in the conduct that violated the rule.' " See 39 Mass. App. Ct. at 511 & n.9. However, the quoted language is, we think, ambiguous: it could mean only that the em-

In concluding that Still had not engaged in "deliberate misconduct," the review examiner stated that Still's verbal abuse of the patient "was not done with forethought and therefore can not be considered to have been deliberate." While the degree of intent involved in a "knowing violation" does not necessarily involve "forethought," the review examiner's conclusion that Still had not acted deliberately is relevant to assessing whether she committed a "knowing" violation. Still's testimony (found by review examiner as "credible") supports a conclusion that she lacked the state of mind required to find a "knowing" violation: "[W]e'd been having problems all day and he'd been calling me names and been cursing me out . . . . So, when I went into the room later on that evening to do his room mate, I was in the room and he called me another derogatory name, and by this time, I had had it because I'd had a rough day, and I just said what I said, not thinking, and it wasn't intentionally. I didn't go down there with the intent of swearing at [the patient], because normally I do not swear, but it just came out. . . . I said what I said before I even realized what I'd said. . . . I was not thinking about being discharged. . . . I know there's a policy, but I wasn't thinking about it at that time."

Even if we were to accept, for the sake of argument, that Still was consciously aware that she was engaging in the act of verbal abuse, the evidence is insufficient to support a conclusion that Still acted with awareness of the probable consequences of her act, namely, the violation of her employer's rule or policy. In concluding that a knowing violation had occurred, the examiner relied solely on Still's prior knowledge of the rule or policy, and not on evidence of her intent to commit a violation. Still's conduct was, as the Appeals Court described it, "in the nature of a spontaneous, emotional reaction rather than culpable conscious action performed with an awareness of its character, circumstances and consequences." 39 Mass. App. Ct. at 512. It was in

ployee must be aware of engaging in the conduct itself, and not necessarily that awareness is required, at the time of the conduct, that the conduct violates the rule. We therefore do not assume that the commissioner has already adopted an interpretation of the statute that conforms with our conclusion in this case.

423 Mass. 805 815

Still *v.* Commissioner of the Department of Employment and Training.

substance on her part a serious, but nonetheless, a "good faith lapse in judgment or attention." *Garfield, supra* at 97.[9]

The commissioner has properly expressed a concern that the language of the Appeals Court's decision would entitle a discharged employee to receive benefits in spite of a knowing violation, whenever the existence of fatigue, stress, or other "mitigating circumstances" could be shown. See *id.* at 507, 511-512.[10] He argues that employees would, in effect, be able to use such mitigating circumstances to excuse a knowing violation. To address this concern, we conclude that mitigating circumstances alone will not negate a showing of intent or thereby excuse a "knowing violation." These circumstances may, however, serve as some indication of an employee's state of mind, and may aid the factfinder in determining whether a "knowing violation" has occurred: they may, in some cases, offer support for a conclusion that the employee's act was essentially spontaneous and unplanned. For example, an employee who violates an employer's policy by using abusive language, with conscious awareness of the act, and its probable consequences, has committed a "knowing" violation, regardless of circumstances or prior work history. However, if the act occurred in response to provocation, or while the employee was under extreme stress, and the employee had never committed such an act previously, a factfinder might reasonably conclude that the employee had in fact acted unintentionally. Conversely, if the employee had used abusive language previously, and been warned of the consequences, this might indicate to the factfinder that the latest violation was intentional.[11]

---

[9]See *Guest* v. *Administrator, Unemployment Compensation Act,* 22 Conn. Supp. 458, 459 (Super. Ct. 1961) (employee discharged for striking a supervisor who called him a "queer" acted "on the spur of the moment" and not deliberately, and could not reasonably be denied benefits for engaging in "wilful misconduct").

[10]The cases cited by the Appeals Court all predate the 1992 amendment, and focus on whether the employee had the state of mind required to show "wilful disregard" of the employer's interest at the time of the misconduct. See, e.g., *Shepherd* v. *Director of the Div. of Employment Sec.,* 399 Mass. 737, 739 (1987); *Garfield* v. *Director of the Div. of Employment Sec.,* 377 Mass. 94, 97 (1979); *Wedgewood* v. *Director of the Div. of Employment Sec.,* 25 Mass. App. Ct. 30, 33 (1987).

[11]The presence of mitigating circumstances may also be applicable in determining whether the violated rule was reasonable as applied. See note 3, *supra.*

In Still's case, the decision that was reached by the review examiner does not contain sufficient subsidiary findings to demonstrate that correct legal principles were applied. *Lycurgus* v. *Director of the Div. of Employment Sec.*, 391 Mass. 623, 626-627 (1984). His findings do not establish, by the "substantial and credible evidence" required by § 25 (*e*) (2), that Still was discharged for a "knowing violation" of her employer's rule or policy, and she therefore may not be disqualified from receiving benefits on that basis. In the absence of these necessary findings, we would ordinarily reverse the District Court's decision and order that the District Court judge remand the case to the department for further findings. However, where a review examiner's decision not only fails to cite sufficient findings in support of his conclusion but also affirmatively sets forth subsidiary findings which compel the opposite conclusion, no good purpose is served by remanding the case for further findings. *Jones* v. *Director of the Div. of Employment Sec.*, 392 Mass. 148, 151 (1984). Here, the review examiner found that Still's remarks had been an "outburst," occurring after Still had been "provoked" by the patient's abusive language toward her. The review examiner also concluded that Still's testimony, in which she described her state of mind at the time of the incident, was "credible." These findings compel a conclusion that Still's discharge was not attributable to a knowing violation of her employer's reasonable and uniformly enforced rule or policy.

The judgment of the District Court is reversed, and judgment shall be entered in the District Court remanding this case to the department for entry of an order awarding the plaintiff appropriate unemployment benefits.

*So ordered.*