South Central Rehabilitative Resources, Inc. *v.* Commissioner of Employment & Training.

SOUTH CENTRAL REHABILITATIVE RESOURCES, INC. *vs.*
COMMISSIONER OF THE DIVISION OF EMPLOYMENT AND
TRAINING & another.[1]

No. 99-P-1574.

Worcester. September 26, 2001. - June 13, 2002.

Present: SMITH, MASON, & KANTROWITZ, JJ.

*Employment Security,* Eligibility for benefits.

Findings by a review examiner in the hearings department of the Division of Employment and Training supported the conclusion that an employee had engaged in deliberate conduct in wilful disregard of her employer's interests; however, the examiner erred in ruling that the employer's actions had in some fashion condoned the employee's misconduct, thus entitling her to unemployment benefits, where such a theory had no support in the facts of the case or in legal precedent. [184-186]

CIVIL ACTION commenced in the Dudley Division of the District Court Department on November 17, 1997.

The case was heard by *Vito A. Virzi,* J.

*Edmond A. Neal, III,* for the plaintiff.

*James S. Whitcomb,* Assistant Attorney General, for Commissioner of the Division of Employment and Training.

SMITH, J. The defendant, Donna Francess, was employed by the plaintiff, South Central Rehabilitative Resources, Inc. (South Central), as a program staff supervisor from July of 1989 until she was discharged on June 10, 1997. On June 13, after she was discharged by South Central, Francess filed an unemployment benefits claim with the Division of Employment and Training (DET) at its local office. A claims representative determined

[1]Donna Francess.

that she was disqualified from such benefits. Francess appealed that determination to the hearings department, and after a hearing, a review examiner concluded that she was entitled to benefits.

South Central appealed that decision to the board of review of the DET, but its request for further review was denied. South Central then sought judicial review in the District Court, and a judge affirmed the hearings department's decision. South Central now appeals that decision to this court.

The facts concerning Francess's employment and her termination, as contained in the review examiner's findings and in testimony the review examiner found to be credible, are not in dispute.

At the time of her termination, Francess worked in Sturbridge at a residential house for mentally retarded citizens. South Central is partially funded by the Department of Mental Retardation (DMR). Throughout Francess's employment with South Central, she had been the subject of various disciplinary actions, including written disciplinary reports and demotions.

On March 3, 1997, Francess and other staff members met with a behavior specialist to discuss a female resident whose recent behavior had not been addressed in her current behavior plan. The resident was blind and had been diagnosed as being in the profound range of mental retardation. She was nonverbal, using some signs and facial gestures to express herself.

Francess's specific concerns centered around the resident's behavior in throwing herself out of bed and disrobing, throwing her pocketbook, and her use of the toilet. The resident was very attached to her pocketbook and liked to keep it under her pillow when she slept. Ordinarily, when the resident threw her pocketbook, she would have to pick it up herself if she wanted it. If she tossed the pocketbook where others might trip over it, a staff member might place it on a table so people would not step on it and then the staff would give it back to her. Because the resident was blind, she would not be able to locate her pocketbook if it was moved from where she had thrown it.

The discussion on March 3 included the possible use of positive reinforcements to encourage good behavior from this resident. Because Francess had successfully used a radio as a

reinforcement with another resident,[2] she asked the behavioral specialist if she and other staff could make the resident's pocketbook a reinforcement, i.e., take it away from the resident if she misbehaves, and then return it once the resident exhibits positive behavior. The behavioral specialist indicated that she was not sure the resident's pocketbook could be withheld because it was the resident's personal property. The specialist told Francess to follow the resident's current behavior plan and the specialist would check with the peer review committee, which reviewed behavior plans, about Francess's proposal.

Later that day, an incident occurred between Francess and the resident. The resident became agitated, started to scream, and threw her pocketbook. Francess picked it up and returned it to her. When the resident threw the pocketbook again, Francess decided to "seize the moment" to see if it would help the resident return to good behavior. She placed the pocketbook on the microwave and planned to give it back to the resident once she calmed down. Before the resident went to bed, her pocketbook had still not been returned to her.

During the night, the resident threw herself out of bed several times. Francess helped pick her up those times. Francess then went to sleep between 2:00 and 5:00 A.M. When she woke, she learned that the resident had thrown herself out of bed at 4:00 A.M. and had been left there for a period of time.

South Central is a mandated reporter and, therefore, must report all incidents of abuse and neglect. Once abuse or neglect is reported, an investigation is done by an independent agency, such as the DMR. If the allegations of resident abuse are substantiated, the staff member may be terminated.

On or about March 10, 1997, some individuals whom Francess supervised lodged complaints against Francess with South Central concerning the incidents of the previous week. After interviewing the staff on March 13, a South Central supervisor met with Francess on March 18, 1997. After the meeting, the supervisor wrote a memorandum to Francess, specifying actions and behaviors that she was to follow.

The next day, an anonymous complaint was called into the

---

[2]That resident had purchased a radio and was allowed to use it only if he behaved.

Disabled Persons Protection Commission hotline regarding Francess's conduct on March 3. The complaint was referred to the DMR for investigation.

On or about May 30, 1997, the DMR issued a report substantiating the allegations of mistreatment by Francess, including the pocketbook-withholding charge. In an "action plan" dated June 30, the DMR determined that South Central had to take disciplinary action, up to and including terminating Francess's employment. If her employment were continued, the DMR stated that Francess could not work with those individuals whose placement was funded by the DMR. The DMR also determined that South Central was to take disciplinary action against those members of the staff who failed to report the incident in a timely fashion. During the investigation by the DMR, South Central permitted Francess to work, but upon receiving the report, South Central discharged her. Subsequently, Francess filed her claim for unemployment benefits.

In the review examiner's decision ruling that Francess was entitled to unemployment benefits, she first considered South Central's complaint that Francess had verbally abused the resident and neglected her when she fell out of bed. The review examiner ruled that South Central "failed to establish that [Francess] either neglected or mistreated [the resident] by yelling at her or leaving her on the floor during the night."

In regard to the pocketbook-withholding incident, the reviewing examiner ruled that South Central did establish that Francess experimented with behavioral intervention by withholding the resident's pocketbook. The reviewing officer found that "[Francess] was fully aware of the employer's expectations with regard to withholding the pocketbook, because she had just attended a meeting at which the issue was discussed. In spite of the employer's expectations, [Francess] decided to 'seize the moment' and withhold the [resident's] pocketbook. It was clearly deliberate, it was clearly inappropriate, and it was clearly not in the employer's best interests. Further, [Francess] probably deserved to lose her job for engaging in such behavior."

The reviewing examiner ruled, however, that Francess was entitled to unemployment benefits because South Central's conduct in "allowing [Francess] to work for a week before

even meeting with her to address the issue, never reporting the incident in spite of being a mandated report[er], and allowing [Francess] to work in the same capacity through the investigation process, would suggest condonation of the behavior. Further, it would lessen the severity of [Francess's] actions to an extent that a disqualification under Section 25(*e*)(2) cannot be imposed." Therefore, the review examiner ruled that Francess was entitled to unemployment benefits. A District Court judge affirmed the decision.

On appeal, South Central claims that the review examiner committed error in ruling that South Central's actions amounted to condonation of Francess' deliberate misconduct in wilful disregard of South Central's interest. Therefore, it claims that the District Court judge committed error in affirming the hearings department's decision.[3]

*Analysis.* "When a discharged worker seeks [unemployment benefits], the issue before the board is not whether the employer was justified in discharging the claimant but whether the Legislature intended that benefits should be denied in the circumstances." *Garfield* v. *Director of the Div. of Employment Sec.*, 377 Mass. 94, 95 (1979).

General Laws c. 151A, § 25(*e*)(2), provides that an employee is disqualified from unemployment benefits if substantial and credible evidence shows that the discharge was attributable to "deliberate misconduct in wilful disregard of the employing unit's interest, or to a knowing violation of a reasonable and

---

[3]South Central also raises the failure of the review examiner to give preclusive effect to the findings contained in the DMR report, citing *Commissioner of the Dept. of Employment & Training* v. *Dugan*, 428 Mass. 138 (1998). In that case, the court ruled that factual findings underlying a clerk-magistrate's removal from her office could be given preclusive effect in a proceeding determining whether the claimant could receive unemployment benefits. See *id.* at 141-144.

Here, the doctrine of collateral estoppel is inapplicable because Francess did not have a "full and fair opportunity to litigate the issues in question" in contrast to the evidentiary hearing held in *Dugan.* See *Martin* v. *Ring*, 401 Mass. 59, 61 (1987). The DMR investigation, which led to the report at issue, was conducted pursuant to 115 Code Mass. Regs. §§ 9.00 et seq., the purpose of which is not to provide for an adjudicatory hearing. See 115 Code Mass. Regs. § 9.01(3)(a). Therefore, the review examiner was not required to give preclusive effect to the DMR report.

uniformly enforced rule or policy of the employer, provided that such violation is not shown to be as a result of the employee's incompetence . . . ."[4] *Ibid.* The phrase "deliberate misconduct in wilful disregard of an employer's interest 'denotes intentional conduct or inaction which the employee knew was contrary to the employer's interest.' " *Still* v. *Commissioner of the Dept. of Employment & Training,* 423 Mass. 805, 810 (1996), quoting from *Goodridge* v. *Director of the Div. of Employment Sec.,* 375 Mass. 434, 436 (1978).

"The denial of benefits . . . requires evidence as to 'the claimant's state of mind in performing the acts that cause [her] discharge.' " *Still, supra,* quoting from *Garfield* v. *Director of the Div. of Employment Sec.,* 377 Mass. at 97. Therefore, a two-part analysis must be employed and both " 'deliberate misconduct' and 'wilful disregard' of the employer's interest must be shown in order to disqualify the employee, and the employee's state of mind at the time of the misconduct is an issue for both parts." *Ibid.,* quoting from *Jean* v. *Director of the Div. of Employment Sec.,* 391 Mass. 206, 208 (1984).

Here, the review examiner found that Francess engaged in deliberate misconduct by withholding the pocketbook. Francess claims that the review examiner did not make any findings regarding her alleged wilful disregard of South Central's best interests. We disagree.

The review examiner specifically found that Francess was aware of South Central's expectations in regard to withholding the pocketbook as she had just attended a meeting at which the issue was discussed. The meeting notwithstanding, Francess "seized the moment" and withheld the pocketbook, which the review examiner found was not in South Central's interest. Therefore, we hold that the review examiner's findings support a conclusion that Francess engaged in deliberate conduct in wilful disregard of her employer's interests.

South Central claims that the review examiner erred in ruling

---

[4]A 1992 amendment to G. L. c. 151A, § 25(*e*)(2), added the "knowing violation" as a new basis for disqualification. See *Still* v. *Commissioner of the Dept. of Employment & Training,* 423 Mass. 805, 811 (1996). Here, South Central does not make any argument that Francess committed a knowing violation of a rule or policy.

that South Central's actions condoned Francess's conduct and therefore she is entitled to unemployment benefits.

We are aware of decisions where a court has considered the existence of mitigating circumstances on the part of the employee at the time of the misconduct in order to determine whether the circumstances serve as some indication of the employee's state of mind. See *Still* v. *Commissioner of the Dept. of Employment & Training*, 423 Mass. at 815; *Wedgewood* v. *Director of the Div. of Employment Sec.*, 25 Mass. App. Ct. 30, 33 (1987).

We do not know of any decision, and we have not been referred to any, that holds that an employer's actions had in some fashion condoned the employee's deliberate misconduct in wilful disregard of the employer's interest. It is the employee's state of mind that is considered, not necessarily that of the employer. Even so, in the circumstances present here, we do not find any such condonation even if such a defense were proper.

*Judgment reversed.*