CITY OF BOSTON *vs*. DEPUTY DIRECTOR OF THE DIVISION OF
EMPLOYMENT & TRAINING & another.[1]

No. 01-P-1829.

Suffolk. June 4, 2003. - September 8, 2003.

Present: BECK, KASS, & DOERFER, JJ.

*Employment Security,* Eligibility for benefits, Judicial review, Misconduct by
employee. *Administrative Law,* Substantial evidence.

A Boston Municipal Court judge erred in affirming a decision of the board of
review of the Division of Employment and Training that granted unemploy-
ment benefits to a Boston police officer who had been discharged for a
second breach of police department rules prohibiting the ingestion of
controlled substances, where the officer's conduct in using marijuana dur-
ing a period in which he had been voluntarily suspended and required to
complete a drug rehabilitation program was both a knowing violation of a
known rule and behavior that was, in the words of G. L. c. 151A, § 25(*e*),
"attributable to deliberate misconduct in wilful disregard of the employing
unit's interest." [227-230]

CIVIL ACTION commenced in the Boston Municipal Court
Department on April 7, 2000.

The case was heard by *John T. Lu,* J.

*Gregory B. Franks,* Assistant Corporation Counsel, for the
plaintiff.

*John E. Bowman, Jr.,* Assistant Attorney General, for the
Deputy Director of the Division of Employment & Training.

DOERFER, J. Drew Smith, a Boston police officer, was
discharged for a second breach of Boston police department
rules prohibiting the ingestion of controlled substances.[2] He was
granted unemployment benefits pursuant to a decision of the
board of review of the Division of Employment and Training

[1] Drew Smith.

[2] He does not challenge his termination in these proceedings. We were
informed at oral argument that his termination was upheld after arbitration.

(DET) that denied the Boston police department's appeal of the review examiner's decision in favor of Smith. The city appeals the affirmance of that decision by a judge of the Boston Municipal Court, claiming that Smith's discharge was, in the words of G. L. c. 151A, § 25(*e*), "attributable to deliberate misconduct in wilful disregard of the employing unit's interest, or to a knowing violation of a reasonable and uniformly enforced rule or policy of the employer." It argues that the DET decision was based upon an error of law and was not supported by substantial evidence.[3] We agree and reverse.

The evidence before the DET was that Smith tested positive for cocaine at a routine drug screening.[4] Under rule 111[5] of the Boston police department (BPD), he entered into a drug rehabilitation agreement pursuant to which he was voluntarily suspended for forty-five days without pay — from May 10 to July 15, 1999 — and required to complete a drug rehabilitation program. Smith began attending the program on June 23, 1999. After completion of the rehabilitation program, he was subject to random drug screening for thirty-six months. Rule 111 also provides that the penalty for a second instance of ingestion of a controlled substance is termination. All second offense drug use by Boston police officers uniformly resulted in termination.

Upon completion of his suspension and rehabilitation program, Smith returned to work on July 16, 1999, and on July

---

[3]The procedures for determining and reviewing the eligibility of a person for unemployment benefits are governed by G. L. c. 151A, § 42, which provides that the standard for judicial review is governed by G. L. c. 30A, § 14, par. 7. "The review examiner is the authorized representative of the commissioner, and the review examiner's decision is therefore the commissioner's decision. G. L. c. 151A, § 39(*b*). . . . If the board denies the application for review, the commissioner's decision is treated as that of the board and is subject to judicial review. G. L. c. 151A, §§ 41-42 . . . ." *Still* v. *Commissioner of the Dept. of Employment & Training*, 423 Mass. 805, 806 n.2 (1996).

[4]Under the terms of a collective bargaining agreement, officers are screened annually within thirty days of their birthday using a hair follicle test. An earlier version of Boston police department rule 111 providing for random urine testing did not pass muster under art. 14 of the Massachusetts Declaration of Rights. See *Guiney* v. *Police Commr. of Boston*, 411 Mass. 328, 334 (1991).

[5]This rule was the product of negotiations between the Boston police department and the Boston Patrolman's Association. It provides that possession, use, manufacture, or sale of illegally used drugs or controlled substances while off duty is prohibited.

22 took a drug screening test, which he failed because metabolites of marijuana were detected in his urine. He admitted that he had smoked marijuana during his forty-five day suspension. He was subsequently terminated for this second offense. Upon his termination, he applied for unemployment benefits. An initial decision by a DET claims adjudicator to deny benefits was reversed in an adjudicatory hearing before the DET. Smith's argument was that the intent of rule 111 was to regard substance abuse as a treatable condition which did not require termination for a first offense. Though he had completed treatment when he tested positive the second time, he had smoked on June 20, 1999, prior to entering that program. Thus, he reasons, the intent of the rule was to treat a second instance of drug ingestion prior to treatment as an offense of less significance than it would otherwise be during the treatment program or thereafter.

The argument is relevant because not every termination for cause by an employer deprives an employee of the benefits of unemployment compensation. "When a discharged worker seeks [unemployment benefits], the issue before the board is not whether the employer was justified in discharging the claimant but whether the Legislature intended that benefits should be denied in the circumstances." *Garfield* v. *Director of the Div. of Employment Security*, 377 Mass. 94, 95 (1979). *South Cent. Rehabilitative Resources, Inc.* v. *Commissioner of the Div. of Employment & Training*, 55 Mass. App. Ct. 180, 184 (2002).

The case is governed by G. L. c. 151A, § 25, which provides as follows: "[N]o benefits shall be paid to an individual under this chapter . . . (*e*) . . . after the individual has left work . . . (2) by discharge shown to the satisfaction of the commissioner by substantial and credible evidence to be attributable to deliberate misconduct in wilful disregard of the employing unit's interest, or to a knowing violation of a reasonable and uniformly enforced rule or policy of the employer, providing that such violation is not shown to be the result of the employee's incompetence, or (3) because of conviction of a felony or misdemeanor." The Legislature's purpose in enacting this provision was "to deny benefits to a claimant who has brought about his own unemployment through intentional disregard of

standards of behavior which his employer [had] a right to expect." *Still* v. *Commissioner of the Dept. of Employment & Training*, 423 Mass. 805, 810 (1996), quoting from *Garfield* v. *Director of the Div. of Employment Security*, 377 Mass. at 97.

" 'A decision by the board will be reversed only if it is based upon an error of law or is unsupported by substantial evidence.' *Potris* v. *Commissioner of the Dept. of Employment & Training*, 42 Mass. App. Ct. 735, 737-738 (1997). 'Substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion." ' " *National Sch. Bus Serv., Inc.* v. *Commissioner of the Dept. of Employment & Training*, 49 Mass. App. Ct. 445, 449-450 (2000), quoting from *Goldstein* v. *Board of Registration of Chiropractors*, 426 Mass. 606, 612 (1998). The DET framed the legal issue before it as, "Whether there is substantial and credible evidence to show that the claimant left work . . . by discharge for deliberate misconduct in wilful disregard of the employing unit's interest, or for a knowing violation of a reasonable and uniformly enforced policy or rule . . . ." It summarized the terms of rule 111 and found that the claimant last used an illegal drug while on suspension for using an illegal drug. It also found that the BPD had established a reasonable policy given the nature of police work and the requirement that all police uphold the law; that the claimant was aware of the policy; and that the policy of discharging a second offender was uniformly enforced. Nevertheless, DET also ruled that the policy was not reasonably employed in this case because the claimant had not engaged in the use of illicit drugs after the rehabilitation program began. Thus, it ruled that the BPD had not met its burden of showing a knowing violation of a uniformly enforced rule by substantial credible evidence. It interpreted the application of the rule in this case as negating the intent of the discharge and treatment aspects of rule 111. This interpretation was erroneous as a matter of law.

The claimant's conduct in using marijuana during his period of suspension was both a knowing violation of a known rule and behavior which was in wilful disregard of his employer's known interests. At the time he used marijuana, the evidence permits no conclusion other than that the claimant knew of the explicit rule against the use of such a drug while off duty and

on suspension. Likewise, the known interest of the BPD was to forbid its officers from using illicit drugs. Thus, both deliberate misconduct and wilful disregard of the employer's interest was shown. The employee's requisite state of mind at the time of the misconduct was established by substantial evidence on both issues. See *South Cent. Rehabilitative Resources, Inc.* v. *Commissioner of Div. of Employment & Training*, 55 Mass. App. Ct. at 184-186. Cf. *Still* v. *Commissioner of the Dept. of Employment & Training*, 423 Mass. at 815-816; *Wedgewood* v. *Director of the Div. of Employment Security*, 25 Mass. App. Ct. 30, 33-34 (1987).

It was not reasonable for a Boston police officer to interpret rule 111 of the BPD as permitting the use of illicit drugs during the suspension period but before beginning treatment. The use of illicit drugs is always prohibited to a police officer, whether on active duty, on leave, or during a suspension. The availability of a humane nonpunitive treatment program does not bestow a free pass on an officer to continue to use illicit drugs while on suspension for illicit drug use until the rehabilitation program begins.

In spite of the supportive response to police officers who have a drug problem embodied in rule 111, the status of a police officer is different from that of employees in private or other municipal employment. Possession of controlled substances is a crime which police officers are called upon to detect and bring to prosecution. The character of the conduct of a police officer who uses drugs differs from the character of such conduct of others who have been ensnared by addiction, and police officers must understand that difference. See *Attorney Gen.* v. *McHatton*, 428 Mass. 790, 792-794 (1999). Such conduct was a wilful and obvious violation of a known rule within the meaning of that phrase in G. L. c. 151A, § 25(*e*); as such, this conduct precluded the receipt of unemployment benefits as a matter of law.

Thus, the conclusion of the DET that "the intent of the suspension and treatment period was negated by the application of the discharge provision of the policy" was erroneous as a matter of law. Accordingly, there was substantial and credible evidence before the DET to the effect that "the claimant left

work . . . by discharge for deliberate misconduct in wilful disregard of the employing unit's interest, or for a knowing violation of a reasonable and uniformly enforced policy or rule"; the conclusion of the DET to the contrary was erroneous.

Here, the DET's decision affirmatively sets forth subsidiary findings which compel the conclusion that Smith was not entitled to unemployment benefits. See *Jones* v. *Director of the Div. of Employment Security*, 392 Mass. 148, 151 (1984). The judgment of the Boston Municipal Court is reversed and a judgment shall enter remanding the case to the DET for entry of an order denying the claimant unemployment benefits.

*So ordered.*