NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-13440

FALLON COMMUNITY HEALTH PLAN, INC. <u>vs</u>. ACTING DIRECTOR OF THE DEPARTMENT OF UNEMPLOYMENT ASSISTANCE & another.[1]


Worcester.     October 4, 2023. – March 4, 2024.

Present:  Budd, C.J., Gaziano, Lowy, Kafker, Wendlandt, & Georges, JJ.[2]


<u>Employment Security</u>, Appeal, Judicial review, Eligibility for benefits, Burden of proof, Misconduct by employee. <u>Evidence</u>, Religious beliefs.  <u>Administrative Law</u>, Agency's interpretation of statute.



<u>Civil action</u> commenced in the Worcester Division of the District Court Department on July 14, 2022.

The case was heard by <u>Paul F. LoConto</u>, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.


<u>Francesco A. DeLuca</u> (<u>Alicia Maziarz</u> also present) for the plaintiff.

_____

[1] Shanika Jefferson.

[2] Justice Lowy participated in the deliberation on this case prior to his retirement.

Konstantin Tretyakov, Assistant Attorney General, for Acting Director of the Department of Unemployment Assistance.

Margaret E. Monsell, Jamie A. Sabino, & Ruth A. Bourquin, for Massachusetts Law Reform Institute & another, amici curiae, submitted a brief.

BUDD, C.J.  In October 2021, Fallon Community Health Plan, Inc. (Fallon), adopted a policy requiring its employees to be vaccinated against COVID-19.  Shanika Jefferson, a home health aide employed by Fallon, sought a religious exemption from the vaccination requirement, but her request was denied, and her employment was terminated.  Jefferson applied for and eventually was approved to receive unemployment benefits from the Department of Unemployment Assistance (department); however, Fallon contended that Jefferson was ineligible for the benefits, and sought review of the decision.  The board of review of the department affirmed the decision, as did a District Court judge.  For the reasons explained infra, we affirm.[3]

1.  Overview of the unemployment compensation system.  General Laws c. 151A, the unemployment insurance law, was enacted "to provide temporary relief for those who are realistically compelled to leave work through no fault of their own, whatever the source of the compulsion, personal or

---

[3] We acknowledge the amicus brief submitted by the Massachusetts Law Reform Institute and the American Civil Liberties Union Foundation of Massachusetts, Inc.

employer-initiated" (quotation omitted).  Raytheon Co. v.

Director of the Div. of Employment Sec., 364 Mass. 593, 596

(1974).  The law sets out conditions under which individuals

whose employment has been terminated may be eligible for and

receive unemployment benefits.[4]  See G. L. c. 151A, §§ 22, 24.

In enacting c. 151A, "the Legislature recognized that job

layoffs can occur for countless reasons unrelated to the

individual worker's willingness and desire to stay at his job."

Garfield v. Director of the Div. of Employment Sec., 377 Mass.

94, 96 (1979).  When that occurs, the aim of the law is "to

lighten the burden . . . on the unemployed worker and his

family."  G. L. c. 151A, § 74.

However, an employee may be ineligible for unemployment

benefits under certain conditions.  As pertinent here:

> "[N]o benefits shall be paid to an individual under this
> chapter . . . after the individual has left work . . . by
> discharge shown to the satisfaction of the commissioner by
> substantial and credible evidence to be attributable [(1)]
> to deliberate misconduct in wilful disregard of the
> employing unit's interest, or [(2)] to a knowing violation
> of a reasonable and uniformly enforced rule or policy of

---

[4] The law's protections only apply to those who meet the statutory definition of "employee."  See G. L. c. 151A, § 1 (h), (i), (k) (defining "employee" as someone engaged in "employment," i.e., "service . . . performed for wages or under any contract, oral or written, express or implied").  See also G. L. c. 151A, §§ 2, 3, 4A, 5, 6, 8A, 8B, 8C (setting forth additional parameters of "employment").  The parties do not dispute that Jefferson was an "employee" of Fallon for purposes of c. 151A.

the employer, provided that such violation is not shown to be as a result of the employee's incompetence."

G. L. c. 151A, § 25 (e) (2).  Under the first clause of § 25 (e) (2), an employee is disqualified from unemployment benefits if he or she was discharged because of "intentional conduct or inaction which the employee knew was contrary to the employer's interest."  Still v. Commissioner of Employment & Training, 423 Mass. 805, 810 (1996), quoting Goodridge v. Director of the Div. of Employment Sec., 375 Mass. 434, 436 (1978).  In turn, "[t]o determine whether the employee's state of mind demonstrated 'wilful disregard' of the employer's interest, the factfinder must 'take into account the worker's knowledge of the employer's expectation, the reasonableness of that expectation and the presence of any mitigating factors.'" Still, supra at 810-811, quoting Garfield, 377 Mass. at 97.

The second clause of § 25 (e) (2) disqualifies an employee who is discharged due to a "knowing violation of a reasonable and uniformly enforced rule or policy of the employer."  Again, state of mind is key:  "a discharged employee is not disqualified unless it can be shown that the employee, at the time of the act, was consciously aware that the consequence of the act being committed was a violation of an employer's reasonable rule or policy."  Still, 423 Mass. at 813.  Here, too, mitigating circumstances may "serve as some indication of

an employee's state of mind, and may aid the factfinder in determining whether a 'knowing violation' has occurred." Id. at 815.

2. Factual and procedural history. The material facts are uncontested. Fallon employed Jefferson from September 2017 until November 2021. While employed at Fallon, Jefferson worked as a home health aide in Fallon's Summit ElderCare program, which provides long-term, personal care to elderly patients. In October 2021, the Executive Office of Health and Human Services (EOHHS) sent out a notice to organizations that provide integrated care plans in the Commonwealth, including Fallon, mandating that such organizations require their employees to be vaccinated against COVID-19.[5] In response, Fallon adopted a policy requiring all employees who work "at Summit ElderCare sites [and] provide direct care or have any physical contact or are in proximity with" patients to provide proof of vaccination by November 8, 2021. The policy provided for medical and religious exemptions but conditioned the exemptions on "the individual's job [being] such that the employer can offer a

---

[5] The notice specifically required employers to comply with "all applicable [COVID-19] guidance documents posted on [the Massachusetts Department of Public Health] website . . .[and] additional . . . guidance . . . bulletins . . . and any subsequent updates." The parties both understood the notice to require that all employees providing health care in the Commonwealth to be vaccinated.

reasonable accommodation to avoid risk of contracting or transmitting COVID-19 on the job," as well as the employee's compliance with the exemption application process. An employee's failure to comply with the vaccine requirement or to obtain an exemption would constitute a resignation.

Jefferson applied for a religious exemption from the vaccination requirement, submitting with her application a letter from the president of her congregation confirming the sincerity of her religious objection. Per Fallon's policy, Jefferson met with Fallon's human resources department and a vice-president to discuss her application to be exempt from the vaccine mandate and whether accommodations could be made to allow her to continue working for Fallon despite her unvaccinated status. Jefferson expressed her willingness to wear full personal protective equipment, to frequently test for COVID-19, and to comply with alternative accommodations proposed by Fallon. However, Fallon determined that, absent Jefferson's vaccination, no reasonable accommodations could be made to adequately protect Jefferson's patients from contracting COVID-19. Jefferson's request for a religious exemption was denied, and she was discharged.

Thereafter, Jefferson applied for unemployment benefits from the department and initially was determined to be

ineligible. However, after a hearing, the decision was reversed by a departmental review examiner who concluded that Fallon "failed to establish by substantial and credible evidence" that Jefferson was disqualified from benefits pursuant to either clause of § 25 (e) (2).[6]

Fallon appealed to the department's board of review, see G. L. c. 151A, § 40, which affirmed the review examiner's decision. Fallon subsequently sought judicial review of that decision in the District Court pursuant to G. L. c. 151A, § 42, and G. L. c. 30A, § 14 (7). After a nonevidentiary hearing, the judge affirmed the board of review's decision on different grounds.[7] Fallon appealed, and we transferred the matter to this court on our own motion.

3. Analysis. Fallon contends that the department erred in concluding that § 25 (e) (2) does not disqualify Jefferson where she refused the COVID-19 vaccine in knowing violation of

---

[6] Because the "grounds for disqualification in § 25 (e) (2) are considered to be exceptions or defenses to an eligible employee's right to benefits, . . . the burdens of production and persuasion rest with the employer." Still, 423 Mass. at 809.

[7] The judge determined that Jefferson did not comply with Fallon's policy, but that she was still eligible for benefits because the policy was "not reasonable on [its] face [nor] in the manner in which it was implemented," because Fallon refused to grant a religious exemption to any applicant. As discussed infra, we disagree with the judge on this point.

Fallon's reasonable policy and in willful disregard of Fallon's interest in keeping its vulnerable patient population healthy. We review the department's decision pursuant to G. L. c. 30A, § 14 (7). See G. L. c. 151A, § 42. Under that framework, we may set aside or modify a decision by the department if it is, among other things, in "violation of constitutional provisions," "[b]ased upon an error of law," "[a]rbitrary or capricious," an "abuse of discretion," or "otherwise not in accordance with law." G. L. c. 30A, § 14 (7). Although we review questions of law on a de novo basis, we give "substantial deference to a reasonable interpretation of a statute by the administrative agency charged with its . . . enforcement." Craft Beer Guild, LLC v. Alcoholic Beverages Control Comm'n, 481 Mass. 506, 511-512 (2019), quoting Commerce Ins. Co. v. Commissioner of Ins., 447 Mass. 478, 481 (2006).

As the party appealing from the final agency decision, Fallon bears a "heavy burden" to demonstrate that the decision is invalid. Massachusetts Ass'n of Minority Law Enforcement Officers v. Abban, 434 Mass. 256, 263-264 (2001). Moreover, with regard to the unemployment compensation law in particular, we are mindful that the statute specifically states it is to be "construed liberally in aid of its purpose, which purpose is to

lighten the burden which now falls on the unemployed worker and his [or her] family."  G. L. c. 151A, § 74.

a.  Deliberate misconduct in willful disregard of Fallon's interest.  Fallon asserts that Jefferson engaged in deliberate misconduct in willful disregard of Fallon's interests because she was aware of the vaccination policy and that the consequence of her failure to comply with the policy put Fallon's vulnerable patients at risk.  This argument misses the mark.

First, it presupposes that Jefferson engaged in "deliberate misconduct" by failing to get the COVID-19 vaccine.  In fact, Jefferson engaged in a good faith effort to comply with Fallon's policy by applying for a religious exemption, which was offered under the policy, based on her sincerely held religious beliefs.  That her request for an exemption was denied does not mean that she engaged in deliberate misconduct.  See, e.g., Garfield, 377 Mass. at 98 (insufficient proof of deliberate misconduct where employee "was neither insubordinate nor recalcitrant").

Second, even if Jefferson's actions could be considered deliberate misconduct, Fallon improperly conflates the "deliberate misconduct" prong with the "willful attempt to undermine an employer's interest" prong, presuming that if one is met, both are met.  We have held, however, that deliberate

misconduct and disregarding an employer's interest are distinct elements:

> "The provision requires a two-part analysis: both 'deliberate misconduct' and 'wilful disregard' of the employer's interest must be shown in order to disqualify the employee, and the employee's state of mind at the time of the misconduct is an issue for both parts."

Still, 423 Mass. at 810, quoting Jean v. Director of the Div. of Employment Sec., 391 Mass. 206, 208-209 (1984). See Goodridge, 375 Mass. at 436 ("Deliberate misconduct alone is not enough. Such misconduct must also be in 'wilful disregard' of the employer's interest").

Here, the record demonstrates that rather than disregarding Fallon's interest, Jefferson was willing to take several measures, including wearing personal protective equipment and undergoing frequent testing, in order to keep Fallon's vulnerable patient population safe.

b. Knowing violation of a reasonable and uniformly enforced policy. Fallon fares no better in carrying its burden to demonstrate that the second clause of § 25 (e) (2) applies to Jefferson. That is, although Fallon's policy was reasonable and uniformly enforced,[8] Fallon has failed to demonstrate that

---

[8] In concluding that Fallon's policy was "not reasonable on [its] face and in the manner in which it was implemented," the judge erred. Fallon issued its vaccination policy in response to compulsory directives from the EOHHS and thereafter enforced that policy in a manner consistent with the severity of the

Jefferson should be disqualified on the basis of a "knowing violation" of that policy. Although Jefferson may have violated the terms of Fallon's vaccination policy, the critical question is whether it was a "knowing" violation. This determination depends, in part, on our consideration of any mitigating circumstances relating to the employee's state of mind at the time of the violation. See Still, 423 Mass. at 815 (mitigating factors "may aid the factfinder in determining whether a 'knowing violation' has occurred"). Here, the key mitigating factor is the reason for Jefferson's noncompliance with the vaccination policy -- namely, her sincere religious beliefs.

Although Jefferson was aware of the policy prior to and during her noncompliance, the unique circumstances here did not present Jefferson with a meaningful choice regarding vaccination given her religious beliefs. In other cases in which this court determined that an employee was rightfully disqualified under § 25 (e) (2), the court found the employee had some capacity to

---

risks presented by its work, providing in-person health care to vulnerable patients. Although Fallon's policy included a procedure by which employees could request medical or religious exemptions, Fallon's inability to provide a reasonable accommodation in these circumstances is not dispositive of the vaccination mandate's reasonableness, as reasonable accommodations may not be available in every line of work. See G. L. c. 151B, § 4 (1A) (employers are not required to provide accommodations that would impose "undue hardship," such as "unduly" compromising "the health or safety of the public" or "the orderly transaction of business").

refrain from violating the employer's policy but chose not to do so. Compare Jean, 391 Mass. at 209 (noting disqualification may not be warranted due to mitigating circumstances where employee may have misunderstood instructions due to language barrier), and Still, 423 Mass. at 807, 815-816 (holding one-time violation of employee subject to provocation and "extreme stress" was not disqualifying due to mitigating circumstances), with Shriver Nursing Servs., Inc. v. Commissioner of the Div. of Unemployment Assistance, 82 Mass. App. Ct. 367, 375 (2012) (disqualification warranted where employee fell asleep on job without mitigating circumstances).

4. Conclusion. In the final analysis, we agree with the department that Jefferson's violation of Fallon's policy did not result from a choice for which the Legislature intended to withhold unemployment benefits. See Still, 423 Mass. at 809 ("the issue is not whether the employee had been discharged for good cause, but whether the Legislature intended to deny benefits in the circumstances presented by the case"). See also Smith v. Director of the Div. of Employment Sec., 376 Mass. 563, 567 (1978) ("While the violation of a work rule may well justify the discharge of an employee, such a violation does not necessarily amount to misconduct for unemployment compensation purposes" [citation omitted]). Accordingly, we affirm the

decision of the District Court judge albeit on different grounds.

So ordered.